**NO. 22-50097**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**NATHANIEL MITCHELL,**

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of California
Honorable Larry A. Burns, Presiding
U.S.D.C. No. 21-cr-01456-LAB-1
_____

**APPELLANT'S OPENING BRIEF**
_____

Zandra Luz Lopez
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Zandra_Lopez@fd.org

Attorneys for Defendant-Appellant

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

INTRODUCTION ........................................................................ 1

STATEMENT OF JURISDICTION AND CUSTODY STATUS .............. 3

RELEVANT LEGAL PROVISIONS ............................................. 3

ISSUES PRESENTED ............................................................. 4

STATEMENT OF FACTS........................................................... 4

    I.    Mr. Mitchell experienced constant trauma throughout his life. ................................................................. 4

    II.    Mr. Mitchell flees from police resulting in a severe one-car accident. ................................................. 6

    III.    Mr. Mitchell's injuries are significant, and he will endure excruciating pain for the rest of his life..................... 7

    IV.    Mr. Mitchell pleads guilty pursuant to a plea agreement with the government. ........................................... 8

        A.    The parties negotiate a sentencing agreement that  considers Mr. Mitchell's conduct and resulting injuries ....................................................... 8

        B.    In exchange for the sentencing recommendation, Mr. Mitchell gives up several of his rights ................................. 10

    V.    The district court finds that Mr. Mitchell's self-inflicted injuries could not be a basis for a decrease in sentence and rejects the plea agreement as a matter of fact. ........................................................................ 11

SUMMARY OF ARGUMENT .................................................. 17

STANDARD OF REVIEW ....................................................... 19

i

ARGUMENT ................................................................................ 19

    I.    Courts cannot refuse to consider certain relevant
          evidence when conducting the § 3553(a) analysis. ............. 19

    A.  The court rejected the plea agreement as a matter of
          fact, denying any consideration of the rights given up
          by Mr. Mitchell ....................................................... 21

    B.  The district court categorically refused to consider Mr.
          Mitchell's injuries because they were self-inflicted ............ 27

CONCLUSION ............................................................................ 31

CERTIFICATE OF RELATED CASES ................................................. 32

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Federal Cases**                                                        **Page(s)**

*Concepcion v. United States,*
    142 S. Ct. 2389 (2022) ............................................................... 20, 29, 30

*Gall v. United States,*
    552 U.S. 38 (2007) ........................................................................ 19, 20

*Koon v. United States,*
    518 U.S. 81 (1996) .................................................................... 19, 28, 30

*Pepper v. United States,*
    562 U.S. 476 (2011) ................................................ 17, 20, 27, 28, 29

*United States v. Armstead,*
    552 F.3d 769 (9th Cir. 2008) ................................................................ 19

*United States v. Bruce,*
    976 F.2d 552 (9th Cir. 1992) ................................................................ 26

*United States v. Camarillo-Tello,*
    236 F.3d 1024 (9th Cir. 2001) .............................................................. 23

*United States v. Carty,*
    520 F.3d 984 (9th Cir. 2008) (en banc) ............................................... 20

*United States v. Gonzalez-Melchor,*
    648 F.3d 959 (9th Cir. 2011) ................................................................ 26

*United States v. Gonzalez-Zotelo,*
    556 F.3d 736 (9th Cir. 2009) ................................................................ 22

*United States v. Hammons,*
    558 F.3d 1100 (9th Cir. 2009) .............................................................. 19

*United States v. Hernandez-Gomez,*
    No. 21-50224, 2023 WL 1097256 (9th Cir. Jan. 30, 2023) .......... 23, 24

*United States v. Heredia,*
    768 F.3d 1220 (9th Cir. 2014) .............................................................. 21

*United States v. Johnson,*
  581 F.3d 994 (9th Cir. 2009) ................................................................ 26

*United States v. Navarro-Botello,*
  912 F.2d 318 (9th Cir.1990) ................................................................ 25

*United States v. Pauley,*
  511 F.3d 468 (4th Cir. 2007) ........................................................ 28, 30

*United States v. Sanchez,*
  No. 21-50205, 2022 WL 16945894 (9th Cir. Nov. 15, 2022) ............. 26

*United States v. Trujillo,*
  713 F.3d 1003 (9th Cir. 2013) ...................................................... 19, 29

*United States v. Waknine,*
  543 F.3d 546 (9th Cir. 2008) ................................................................ 20

## Federal Statutes

18 U.S.C. § 922 ........................................................................................ 1, 8
18 U.S.C. § 924 ............................................................................................ 8
18 U.S.C. § 3231 .......................................................................................... 3
18 U.S.C. § 3553 ................................................................................ *passim*
18 U.S.C. § 3742 .......................................................................................... 3
28 U.S.C. § 1291 .......................................................................................... 3
28 U.S.C. § 2461 .......................................................................................... 8

## Federal Rules

Fed. R. App. P. 4 ......................................................................................... 3
Fed. R. Crim. P. 11 ........................................................................... *passim*

## United States Sentencing Guidelines

U.S.S.G. § 2k2.1 .......................................................................................... 8
U.S.S.G. § 3C1.2 .......................................................................................... 9
U.S.S.G. § 3E1.1 .......................................................................................... 8

**INTRODUCTION**

Nathaniel Mitchell fled from police after a gun was found in his car. He sped away and crashed his car into a pole. After being ejected through the front windshield, Mr. Mitchell laid in the street unconscious, with agonal breathing. He survived but suffered extensive injuries. In addition to an open skull fracture, he also suffered fractures to his jaw, his cervical spine, and his hand. By the time of his sentencing for felon in possession in violation of 18 U.S.C. § 922(g), Mr. Mitchell continued to suffer from chronic pain, including nerve pain that originates in his head and persists down to the length of his body. Each day is extremely difficult.

After negotiations between the parties, Mr. Mitchell and the government entered a plea agreement where he agreed to waive significant trial, appellate, and post-conviction rights, and the government agreed to jointly recommend a sentence of 41 months in custody. The parties reached this sentence recommendation by enhancing the offense level based on the felony reckless evading of police, reducing one level for an appellate waiver and expeditious

1

resolution of the case, and varying downward based on the significant pain Mr. Mitchell will suffer while in custody.

The government explained that it agreed to vary downwards from the Guidelines in an effort to extend a measure of mercy after Mr. Mitchell crippled himself during his arrest. Although he was the architect of his own fate, the government did not believe he deserved to live in excruciating pain while in custody, where his pain would be much more difficult to manage.

The district court rejected consideration of Mr. Mitchell's self-inflicted injuries and rejected consideration of the plea agreement in its entirety. It incorrectly held that the natural consequences from Mr. Mitchell's own conduct was not evidence it could consider for determining just punishment under § 3553(a). According to the court, it is only punishment if imposed by the court or the government. And because the court believed the appellate waiver didn't adequately protect its sentencing decision from appellate review, the court inaccurately claimed that it could reject the entirety of the plea agreement as a matter of fact. It thus refused to entirely consider the

agreement as relevant evidence to the § 3553(a) analysis. These errors require this Court to reverse and remand.

## STATEMENT OF JURISDICTION AND CUSTODY STATUS

Mr. Mitchell appeals his sentence of 87-months custody and three-year term of supervised release that was imposed following the revocation of supervised release. The United States District Court for the Southern District of California had original jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. §1291 and 18 U.S.C. §3742. The district court entered judgment on April 27, 2022. ER-3.[1] Mr. Mitchell filed a timely notice of appeal on May 6, 2022. ER-142; *see* Fed. R. App. P. 4(b)(1)(a)(i).

According to bop.gov his projected release date is August 15, 2028. *See* Find an Inmate, https://www.bop.gov/inmateloc/ (last visited Feb. 23, 2023).

## RELEVANT LEGAL PROVISIONS

The addendum to this brief contains the following pertinent rules: 18 U.S.C.A. § 3553(a), Fed. R. Crim. P. 11.

---

[1] In this brief, "ER" refers to the Excerpts of Record and "PSR" refers to the Presentence Report filed by the probation office.

3

## ISSUES PRESENTED

1. The district court purported to reject a Fed. R. Crim. P. 11(c)(1)(B) plea agreement as a matter of fact based on its disapproval of the agreed upon appellate waiver failing to adequately shield the sentence from appellate review. Did the district court commit procedural error under § 3553(a)'s demand for individualized sentencing when it rejected any consideration of the rights waived by Mr. Mitchell under the plea agreement?

2. The district court rejected any consideration of Mr. Mitchell's self-inflicted injuries that occurred during his commission of the offense when assessing just punishment. The district court expressed that "punishment" can only be imposed by the court or the government. Did the district court commit procedural error under § 3553(a)'s demand for individualized sentencing by categorically holding that injuries that are the natural consequences of the defendant's own conduct cannot be considered when evaluating just punishment?

## STATEMENT OF FACTS

## I. Mr. Mitchell experienced constant trauma throughout his life.

Mr. Mitchell first experienced violence at the hands of his father. When Mr. Mitchell or his siblings misbehaved, his father punished them. The method of punishment often included beatings with an extension cord. These beatings were Mr. Mitchell's first experiences with violence and physical vulnerability. He feared his father but also absorbed this method of discipline as normal and unremarkable. ER-111.

4

Compounding the violence Mr. Mitchell experienced at the hands of his father, he also experienced and saw violence in his neighborhood. He grew up in an area in San Diego with significant gang violence. When he was a young teenager, his mother found him brutally beaten inside their home's open garage. He was left for dead. Violence and the danger associated with where he lived with his family became a defining part of Mr. Mitchell's life long before he became involved in violence himself. ER-111, 116.

At the age of 17, Mr. Mitchell was declared ward of the state. As a young adult into his 20's, he had several arrests including robbery and assault with a firearm. PSR 10. In his 40's, he was arrested twice for driving under the influence. And in 2013, at the age of 43, Mr. Mitchell was convicted in the Southern District of California of felon in possession of a firearm in case number 13CR03728-001-LAB. PSR 11. He was sentenced to a total of 100 months and placed on supervised release for three years. He began his term of supervised release in November of 2020. PSR 11-12.

Upon his release from federal custody, Mr. Mitchell wanted to move away from San Diego and be far from the trauma he had

experienced most of his life. He asked for his supervision to be transferred to Arizona, where he had family support. His girlfriend, who lives in Arizona, moved Mr. Mitchell's mother from California to Arizona so that he would have immediate family in one place and be able to support him. Probation, however, did not approve the request to have supervision transferred. ER-33-34, 37, 78, 105.

## II. Mr. Mitchell flees from police resulting in a severe one-car accident.

On January 28, 2021, police officers approached Mr. Mitchell's car that was located at the intersection of Montezuma Road and College Avenue in San Diego. Mr. Mitchell was unresponsive in the driver seat of the car. The officers shouted at him to wake him up. When an officer reached into the car to place it in the parking gear, the officer saw a gun between Mr. Mitchell's feet. The officer tried to wake Mr. Mitchell up again and shook his shoulder. Mr. Mitchell woke up and then drove off. As he was fleeing from the police, the car rolled over multiple times, the car hit a pole, and Mr. Mitchell was ejected from the driver's seat. He went through the car's windshield with such force that he lost his pants and shoes. The officers found Mr. Mitchell unconscious in the roadway.

6

The car had damage to each side and the roof with heavy front-end damage. PSR 4-5; ER-16, 94.

The gun was found approximately one block from the accident site. It was loaded at the time with one round in the chamber and 10 rounds of ammunition in the magazine. PSR 5.

## III. Mr. Mitchell's injuries are significant, and he will endure excruciating pain for the rest of his life.

When police found Mr. Mitchell, his skull was open to the point the officers could see the flesh inside his head. He had significant facial deformities. The officers were concerned that Mr. Mitchell would not survive. His breath was described as agonal. Agonal breathing is defined as a natural reflex that happens when your brain is not getting the oxygen it needs to survive. It is a sign that a person is near death. After being transported to the hospital, he underwent surgery and remained intubated and sedated for several days. In addition to an open skull fracture, he also suffered fractures to his jaw, his cervical spine, and his hand. ER-21-22, 97-102, 110-121.

The consequences of the accident will continue for the rest of Mr. Mitchell's life. More than a year after the accident, Mr. Mitchell's daily pain is considered severe and chronic. He suffers from constant

7

headaches. Mr. Mitchell has limited options to treat his pain while in custody. His nerve pain that originates in his head, persists down the length of his body. Mr. Mitchell had to relearn to walk and now needs the assistance of a cane. PSR 15; ER-23, 46, 53-54, 110.

## IV. Mr. Mitchell pleads guilty pursuant to a plea agreement with the government.

### A. The parties negotiate a sentencing agreement that considers Mr. Mitchell's conduct and resulting injuries.

Pursuant to a plea agreement made under Fed. R. Crim. P. 11(c)(1)(B), Mr. Mitchell agreed to plead to two counts of felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and criminal forfeiture under 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). ER-125-26, 128-29, 134.  As part of the agreement, the parties agreed to the following Guidelines calculation: a base offense level of 20 (U.S.S.G. § 2k2.1) and minus three for acceptance of responsibility (U.S.S.G. § 3E1.1). With a Criminal History Category V, the resulting Guidelines range would have been 46 to 57 months. *Id*.

To address Mr. Mitchell's conduct of fleeing from the officers, Mr. Mitchell also agreed to a four-level enhancement for possession of a weapon in connection with another felony (U.S.S.G. § 2k2.1(b)(6)(B)).

The other felony was the reckless evading of police. ER-16, 115-17, 131-32. That enhancement was greater than a three-level enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2.[2] The four-point increase adjusted the Guidelines range to 70 to 87 months. ER-88.

From there, the parties recommended adjustments to account for Mr. Mitchell's prompt agreement to plead guilty and the serious physical injuries he has suffered. First, the agreement called for a one-level departure for a combination of circumstances relating to Mr. Mitchell's expeditious resolution of the case and appellate waiver, resulting in a Guidelines range of 63 to 78 months. And the parties further requested a four-level variance "in recognition of the medical hardships Defendant has faced and will continue to face in custody due to the injuries he sustained during the commission of the instant

---

[2] Probation initially recommended an additional three-level upward adjustment for reckless endangerment during flight under U.S.S.G. § 3C1.2. Following an objection to its recommendation, probation agreed that the additional enhancement could not apply because §3C1.2 does not permit such double counting. PSR Addendum 1-3. Specifically, the enhancement for reckless endangerment should not apply where the offense guidelines in Chapter Two, "results in an equivalent or greater increase in offense level solely on the basis of the same conduct." U.S.S.G. § 3C1.2. In this case, the parties agreed to a four-level enhancement for this same conduct. ER-115-17.

9

offense." ER-88; *See also* ER-133 (stating variance is recommended "in recognition of the additional hardships Defendant has experienced due to the injuries he sustained during the commission of the instant offense as well as his incarceration with these injuries during the global COVID-19 pandemic.").

The resulting Guidelines range equaled 41 to 51 months custody. ER-88.

## B. In exchange for the sentencing recommendation, Mr. Mitchell gives up several of his rights.

Mr. Mitchell agreed to give up many of his rights in exchange for the sentencing recommendation by the government. Pursuant to the plea agreement, Mr. Mitchell gave up the following:

- The right to appeal should the district court sentence him at or below 51 months (ER-133, 135);

- The ability to withdraw his guilty plea even if the district court imposed a sentence higher than 51 months (ER-131);

- The right to trial rights and all the rights that come with it (ER-128);

- The right to collaterally attack every aspect of the conviction and sentence (ER-134);

- The right to collaterally attack by making "any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged" (*Id.*);

10

- The right to any impeachment information (ER-129);

- The right to withdraw his guilty plea or to file collateral attack based on the existence of impeachment information (ER-129);

- The right to challenge the terms of the forfeiture addendum (ER-134);

- The right to request that supervised release be terminated prior to completing 2/3 of the term (ER-134).

Should the court not follow the plea agreement sentencing recommendation, the only right among these that would not be waived is the right to appeal.

## V.      The district court finds that Mr. Mitchell's self-inflicted injuries could not be a basis for a decrease in sentence and rejects the plea agreement as a matter of fact.

The defense and the prosecution presented a united front with both parties advocating for a custodial sentence of 41 months. ER-88-109. The prosecutor noted that the plea agreement was the result of a "very long course of negotiations" and was achieved only after the defense presented the government with equities regarding Mr. Mitchell's physical condition. ER-46-47.

Both parties acknowledged the seriousness of Mr. Mitchell's conduct up and until the point of the accident. The point that both the defense and the prosecution made to the district court, however, was

that Mr. Mitchell was significantly a different man following the accident. The defense argued that "the person that sits before this court is not the same person that made the decisions on that day." ER-21. Because of his injuries, "the way that he is disabled, the experience in custody this time as opposed to all of the other times he has been in custody is so different." ER-34. Although the injuries are the result of the natural consequences of choices made by him, "the natural consequences are relevant in the decision of what qualifies as just punishment." ER-23. "Mr. Mitchell has to live every day -- morning, noon, night -- with debilitating pain. He can't walk on his own. He is vulnerable in prison." *Id*.

Counsel for the defense continued by stating that the injuries in this case created a unique situation where the "punishment value is different" given his medical problems and his vulnerabilities, "that each day [in custody] is more significant." ER-36.[3]

_____

[3] Mr. Mitchell also spoke to the court, stating that the disabilities he now has are "very, very painful. I can honestly tell your honor sometimes I wish that, you know, I maybe didn't survive the car accident because the pain that I live with every day, at times it is unbearable." ER-46.

The prosecutor stated its position was that Mr. Mitchell "crippled himself in this incident, so it is willing to extend a measure of mercy, if you will [not] complete mercy because the variance is only four levels as opposed to anything greater than that." ER-52. She emphasized that what makes things different now, compared to his prior conviction, is that Mr. Mitchell "has never crippled himself this way. And I think that is where the government was willing to extend additional mercy in this case, given the fact that he has very well documented issues as a result of this accident that he brought upon himself. As your honor said, and the government has never forgotten, that he was the architect of his own fate. And that is something that the government has kept in mind, and that was the reason why the government wasn't willing to go lower than the recommendation that it has argued today." ER-53.

The government further noted that it was requesting substantial time in custody by requesting an additional 24 months for the supervised release violation on top of the 41 months, for a total of 65 months (over five years) and supervised release to follow. ER-52. And in recognition of Mr. Mitchell's prior convictions and his belief that he needs protection, the government also recommended a Fourth

13

Amendment Waiver as a condition of supervised release. ER-50, 88. The government noted that the condition would allow the government to "trust but verify" and to be able to check on him to see if he is complying with the terms of supervised release. ER-50.

The court, however, made clear that the natural consequences of Mr. Mitchell's conduct could not be a factor considered in mitigation. The court stated "[b]ottom line is, Ms. Howard, he did this to himself. So punishment? Only if he punished himself and intended to do this." ER-35. The court continued that this cannot be considered as a punishment sentencing factor under § 3553(a) because it is not "punishment by the court or by the government." ER-36. The court repeatedly said it would not consider this mitigation because it was a natural consequence of Mr. Mitchell's own conduct. ER-22 (pointing out that the injuries "emanated from his decision to flee."); ER-64 ("if he wants to know who is responsible for his physical condition, all he need do is look in the mirror.").

The court further emphasized that this was also a factor that a prosecutor should not be advocating as mitigating. The court discussed the priorities a prosecutor should take into consideration when

14

negotiating a plea. The court told the prosecutor, "[Y]ou are the protector of the public here in the first instance. You are the thin line between, you know, the public and chaos." ER-52. But the prosecutor's position in this case was one the court would "expect from a social worker, but not so much from a prosecutor." ER-55.

After expressing disapproval with the prosecutor's recommendation for a variance that set the appellate waiver at 51 months, the court said it rejected the plea agreement. ER-50. The court stated "I don't get it. I don't agree with the plea agreement, I reject it as a matter of fact." ER-50-51.

The court reasoned that the calculated Guidelines by the parties, with the minus one for waiver of appeal and expeditious resolution of the plea agreement was 63 to 78 months. ER-51. But the agreement indicates Mr. Mitchell could appeal if even if the sentence imposed is less than that. ER-45-46. In the court's view, setting the appellate waiver to a lower range based on the variance for the injuries was unreasonable. ER-51-52.

The court found the agreement "antithetical to the purpose of a plea agreement" which according to the court is to promote finality. *Id*.

The court stated it would have been the same if Mr. Mitchell had simply pled without a plea agreement. *Id.* Having rejected the entire plea agreement, as opposed to just the sentencing recommendation of the parties, the court gave no consideration to the rights Mr. Mitchell gave up in that agreement. ER-55-56.

As to the § 3553(a) factors, the court discussed Mr. Mitchell's prior convictions and the serious nature of his conduct on the day of his arrest. ER-57-58. The court found that the injuries suffered were not proper consideration for the issue of just punishment. ER-36, 64. The court stated that a break in sentencing could not be given when Mr. Mitchell is the one that placed himself in that dangerous position. *Id.* The court emphasized, "if he wants to know who is responsible for his physical condition, all he need do is look in the mirror." *Id.* Because Mr. Mitchell was the "architect of his own fate," the court did not agree that it could be considered as "punishment imposed by the court. He did that to himself." *Id.* The court imposed the high end of 87 months followed by three years of supervised release. ER-63, 65.

The court then proceeded to the supervised release hearing on case number 13CR03728-001-LAB. The court imposed an 18-month

16

consecutive sentence to the underlying 87 months with no supervised release to follow on case number case number 13CR03728-001-LAB. This appeal does not challenge the revocation of supervised release or the sentence on the revocation.

This appeal follows as to the 87 months imposed for the underlying offense.

SUMMARY OF ARGUMENT

The sentencing court may determine the weight to be given relevant mitigating evidence. But a court cannot "invent a blanket prohibition against considering certain types of evidence at sentencing." *Pepper v. United States*, 562 U.S. 476, 491 (2011). That is what the district court did here.

First, the court rejected the plea agreement entered by the parties "as a matter of fact." ER-50. Mr. Mitchell's waiver of rights in the plea agreement is a relevant factor under § 3553(a). But the court refused to consider the entire agreement claiming that it could reject it, when, in fact, it could not. Although the court could reject the sentencing recommendation in the plea agreement, the plea agreement remained binding on the parties, and Mr. Mitchell's waiver of rights continued to

be in effect. Furthermore, the court erroneously found that it could reject the plea agreement because the appellate waiver was not set high enough to protect the court's sentencing decision from appellate review. But the value of an appellate waiver to conserving judicial resources is an impermissible factor in conducting the individualized sentencing.

Second, the court determined that self-inflicted injuries resulting from a defendant's bad conduct cannot be considered for determining just punishment under the § 3553(a) analysis. The court found that self-inflicted wounds could not be considered as part of the punishment analysis because the injuries were the result of Mr. Mitchell's own bad acts and were not punishment imposed by the court or the government. While courts need not consider natural consequences resulting from the defendant's conduct as mitigating in any particular case, they may not categorically refuse to do so in every case. Such a rule violates § 3553(a)'s basic purpose of individualized sentencing.

Had the district court considered the fact of Mr. Mitchell's waiver of rights and his self-inflicted injuries, it very well could have imposed a lower custodial sentence. This Court should remand for resentencing.

STANDARD OF REVIEW

When reviewing a sentence, this Court "must first ensure that the district court committed no significant procedural error." *Gall v. United States*, 552 U.S. 38, 51 (2007). Procedural errors include, among other things, "failing properly to consider the § 3553(a) factors." *United States v. Armstead*, 552 F.3d 769, 776 (9th Cir. 2008). This Court reviews procedural errors de novo. *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009),

ARGUMENT

## I. Courts cannot refuse to consider certain relevant evidence when conducting the § 3553(a) analysis.

"'It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). To ensure sentencing decisions are carefully tailored to "fit the offender and not merely the crime," Congress enacted 18 U.S.C. § 3553(a). *United States v. Trujillo*, 713 F.3d 1003, 1008-09 (9th Cir. 2013) (internal quotation marks omitted). Section 3553(a) sets forth

19

certain factors that sentencing courts must consider, including the history and characteristics of the defendant and just punishment. *Id.*

When evaluating these 3553(a) factors, "[t]he district court must make an individualized determination based on the facts." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). The facts are those available to the court at the time of the sentencing hearing. *Concepcion v. United States*, 142 S. Ct. 2389, 2399 (2022). Moreover, a sentencing court is "largely unlimited either as to the kind of information he may consider, or the source from which it may come." *Id.* The only limitations placed on the sentencing judge are those limitations explicitly imposed by law. *Id.*; *Pepper*, 562 U.S. at 489 n.8.

Ultimately, district courts have wide discretion to decide how much weight to give the aggravating and mitigating factors contained within § 3553(a). *See Gall*, 552 U.S. at 602; *Carty*, 520 F.3d at 994. But district courts may not refuse to consider § 3553(a) factors entirely. *See United States v. Waknine*, 543 F.3d 546, 554-55 (9th Cir. 2008) (holding that a failure to consider any § 3553(a) factors was plain error). And a court cannot "invent a blanket prohibition against considering certain types of evidence at sentencing." *Pepper*, 562 U.S. at 491.

In this case, the court excluded certain facts relating to Mr. Mitchell from consideration of the § 3553(a) factors without considering what weight, if any, it would give to these facts. This was error.

## A. The court rejected the plea agreement as a matter of fact, denying any consideration of the rights given up by Mr. Mitchell.

The district court rejected the plea agreement as a "matter of fact" finding that the agreed upon appellate waiver did not reasonably protect against appellate review of the sentencing decision. ER-50-51. This was error because the court cannot refuse to outright consider a relevant fact to sentencing. And the court's "rejection" of the plea agreement is not supported by the law.

As an initial matter, the fact that a defendant enters into a plea agreement and waives numerous rights is relevant to the § 3553(a) factors. By entering into a plea agreement, the defendant saves the "government significant and scarce resources" and shows that the defendant "has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in the Sentencing Guidelines." *United States v. Heredia*, 768 F.3d 1220, 1226 (9th Cir. 2014) (internal quotation omitted). Along with

21

saving government resources, the defendant also waives several rights under the agreement that he would not have been required to waive with an open plea. *See United States v. Gonzalez-Zotelo*, 556 F.3d 736, 739 (9th Cir. 2009) (discussing difference between fast track and non-fast track defendants).

Here, the government made the determination that Mr. Mitchell saved it significant resources by giving up several rights and pleading expeditiously. Along with agreeing to an appellate waiver, Mr. Mitchell also agreed to waive the following rights: (1) the right to collaterally attack every aspect of the conviction and sentence (ER-134), (2) the right to collaterally attack by making "any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged" (*Id*.), (3) the right to any impeachment information (ER-129), the right to withdraw his guilty plea or to file collateral attack based on the existence of impeachment information (*Id*.); and (4) the right to challenge the terms of the forfeiture addendum (ER-134).

22

But the court did not consider these waivers. The court did not determine what, if any, weight it would give to them. Instead, the court rejected the entire plea agreement "as a matter of fact." ER-50.

The court's legal rational for its purported total rejection of the plea agreement is also invalid. First, the entirety of the plea agreement cannot be rejected by the district court. The agreement in this case was made pursuant to Rule 11(c)(1)(B) (known as a "type-B" agreement). ER-137; Fed. R. Crim. P. 11(c)(1)(B). A type-B plea agreement provides that, if the defendant pleads guilty, the government will "recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply," though "such a recommendation or request does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). The district court may reject the joint sentencing recommendation within that agreement. *See United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001); *United States v. Hernandez-Gomez*, No. 21-50224, 2023 WL 1097256, at *2 (9th Cir. Jan.

30, 2023) (unpublished). But it cannot reject the entirety of the plea agreement. *Hernandez-Gomez*, 2023 WL 1097256, at *2.

The agreement continues to both factually and legally exist. That's because in a type-B plea agreement, "the defendant has *no* right to withdraw the plea if the court does not follow the recommendation or request." FED. R. CRIM. P. 11(c)(3)(B) (emphasis added); *See also* FED. R. CRIM. P. 11 advisory committee's note to 1979 amendment (a type-B plea is an "agreement to recommend" that need not be accepted or rejected because it "is discharged when the prosecutor performs as he agreed to do"). Mr. Mitchell continues to be bound and cannot withdraw his guilty plea. ER-131. All the waiver of rights made in exchange for the government recommendation remain in effect, except for the waiver of appeal relating to the court's imposition of sentence. The plea agreement continues to be in force against Mr. Mitchell despite the court's claimed rejection as a matter of fact.

Second, the court determined it could reject any consideration of the entire plea agreement when, in the court's opinion, the trigger for the appellate waiver was too low. Specifically, by setting the appellate waiver at a Guidelines range that took into consideration a variance for

24

Mr. Mitchell's self-inflicted injuries, the court believed the plea agreement was an "attempt to circumscribe the court's sentencing discretion." ER-50-51 (the court stated it "particularly reject[ed]" the agreement because of the limits on its discretion). But that is not true. Under a type-B plea agreement, the court continues to have broad discretion, making it impossible to "attempt to circumscribe the court's sentencing discretion[,]" as suggested by the court here. ER-50-51.

The court made clear that what it didn't like was, not so much the limitation of its discretion but, the fact that its sentencing decision would be subject to appellate review. *Id*. Citing to this Court's decision in *United States v. Navarro-Botello*, 912 F.2d 318, 321-22 (9th Cir.1990), the court went on to find the agreement "antithetical to the purpose of a plea agreement" which is to promote finality. ER-51. Because the appellate waiver was too low, in the court's opinion, the agreement ended up being similar to an open plea, where the court's sentencing decision would always be subject to appellate review. ER-51.

"Conserving judicial resources on appeal [however,] is not a distinct value that sentencing courts may independently weigh in their

25

18 U.S.C. § 3553(a) analysis." *United States v. Sanchez*, No. 21-50205, 2022 WL 16945894, at *2 (9th Cir. Nov. 15, 2022) (unpublished). A court can reduce a sentence based on a recommendation from the government and the government's assessment of the worth of the appellate waiver. *United States v. Johnson*, 581 F.3d 994, 1004 (9th Cir. 2009). But what the court cannot do, as was done here, is assess the value of the waiver based on its own attempts to save judicial resources and limit its sentencing from review. Permitting such consideration of the appellate waiver risks the court being involved in the negotiations of the plea agreements and threatens the integrity of the judicial process. *United States v. Gonzalez-Melchor*, 648 F.3d 959, 964 (9th Cir. 2011) (quoting *United States v. Bruce*, 976 F.2d 552, 556 (9th Cir. 1992)).

Thus, the court's refusal to even consider Mr. Mitchell's waiver of rights in the plea agreement because it determined it could reject the entire agreement as a "matter of fact" [ER-50] and because the agreement failed to conserve judicial resources, was error. Had the court not taken this improper blanket rejection of the plea agreement, it would have been able to evaluate the waiver of rights and assess what

26

weight, if any, it would have given to them under § 3553(a). For example, the court could have a determined that the waiver of rights was a basis to give something other than the high-end of the Guidelines. This Court should reverse and remand to the district court so that it could consider this factor and determine the weight that will be given to it.

**B.    The district court categorically refused to consider Mr. Mitchell's injuries because they were self-inflicted.**

The sentencing court also impermissibly "invent[ed] a blanket prohibition against considering" a defendant's self-inflicted injuries during the offense conduct. *Pepper*, 562 U.S. at 491. The court made clear that it could not consider the unintended natural consequences of Mr. Mitchell's own actions when determining just punishment under § 3553(a). According to the court, it must be "punishment by the court or by the government" for it to be relevant to the just punishment analysis. ER-36, 64.[4] By "reject[ing] out of hand" pain caused by the defendant's

---

[4] The court emphasized, "if he wants to know who is responsible for his physical condition, all he need do is look in the mirror." ER-64-65. Because it was self-inflicted, the court stated it did not "agree that that is punishment imposed by the court. He did it to himself." *Id.*

own fault, ER-64, the district court "invent[ed] a blanket prohibition against considering certain types of evidence at sentencing." *Pepper*, 562 U.S. at 491.

This procedural rule that judges may not categorically refuse to consider mitigation that goes to a § 3553(a) factor applies to mitigation resulting from the natural consequences of a defendant's own conduct. A sentencing court's consideration of consequences suffered by the defendant as a result of his own actions "is consistent with § 3553(a)'s directive that the sentence reflect the need for 'just punishment,' and 'adequate deterrence.'" *United States v. Pauley*, 511 F.3d 468, 474–75 (4th Cir. 2007) (citing § 3553(a)(2)(B)). In *Pauley*, the Fourth Circuit found it proper for the court to consider the defendant's loss of his teaching certificate and his state pension as a result of his conviction for possession of child pornography. *Id*. The Fourth Circuit found that it was a proper factor despite it being a fact that resulted from the defendant's own bad conduct. *Id*.

Similarly, in *Koon*, the Supreme Court found that the district court did not abuse its discretion in considering facts that were the natural consequences of the defendants' own conduct. *Koon*, 518 U.S.

81. In that case, police officers were convicted of aggravated assault during the arrest of the victim. The government argued on appeal that the sentencing court should not have considered the fact that the police officers were particularly likely to be targets of abuse in prison due to widespread publicity of their case in reaching a sentence. *Id*. at 112. The Supreme Court disagreed and found that these were facts that can be taken into consideration when evaluating sentencing. In reaching its conclusion, the Court reasoned that it is "judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Id*. at 113; *See also Trujillo*, 713 F.3d at 1009 (remanding to ensure that the district court considered the defendant's "fairly extensive arguments and evidence concerning the 'characteristics of the defendant,' pursuant to 18 U.S.C. § 3553(a)(1).").

Furthermore, the Supreme Court recently stated in *Concepcion* that when the "defendant appears for sentencing, the sentencing court considers the defendant *on that day, not on the date of his offense* or the date of his conviction." *Concepcion*, 142 S. Ct. at 2399 (*citing Pepper*,

562 U.S. at 492) (emphasis added). Courts simply cannot refuse to consider after-offense-conduct facts that help tell the story of the individual that is before the court. That is true, even if the circumstances were the result of the individual's own bad conduct. *Koon*, 518 U.S. at 112-13; *Pauley*, 511 F.3d at 474–75. Thus, although the court most certainly should take into consideration Mr. Mitchell's past history and offense conduct, the court cannot "reject[] out of hand" [ER-65] consideration of the self-inflicted consequences resulting from Mr. Mitchell's own conduct when evaluating any of the § 3553(a) factors.

In sum, this categorical rule precluding consideration of mitigation evidence constituted a misunderstanding of the law and of basic sentencing procedures. It denied the court of the opportunity to provide the proper individualized sentencing. And it denied itself the opportunity to sentence Mr. Mitchell as he stood before the court "on that day." *Concepcion*, 142 S. Ct. at 2399. This Court should reverse and remand to the district court so that it could consider this factor and determine the weight that will be given to it.

## CONCLUSION

This Court should vacate the sentence imposed by the district court and remand for resentencing.

Respectfully submitted,

Dated: February 24, 2023      */s/ Zandra Luz Lopez*
ZANDRA LUZ LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone: (619) 234-8467

31

# CERTIFICATE OF RELATED CASES

Counsel is unaware of any related pending cases before this Court.

Respectfully submitted,

Dated:  February 24, 2023         */s/ Zandra Luz Lopez*
                                   ZANDRA LUZ LOPEZ
                                   Federal Defenders of San Diego, Inc.
                                   225 Broadway, Suite 900
                                   San Diego, California 92101-5097
                                   Telephone:  (619) 234-8467

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-50097

I am the attorney or self-represented party.

**This brief contains** 6,086 **words,** including [ ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [ ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Zandra Lopez **Date** 2/24/23

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*