No. 22-50097

# United States Court of Appeals
### FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
PLAINTIFF-APPELLEE

*v.*

NATHANIEL MITCHELL,
DEFENDANT-APPELLANT

*On Appeal from the United States District Court
for the Southern District of California
21CR1456-LAB*

**ANSWERING BRIEF FOR THE UNITED STATES**

RANDY S. GROSSMAN
*United States Attorney*

DANIEL E. ZIPP
*Assistant U.S. Attorney
Chief, Appellate Section
Criminal Division*

MARK R. REHE
*Assistant U.S. Attorney*

*880 Front St., Rm. 6293
San Diego, CA 92101
(619) 546-7986*

**TABLE OF CONTENTS**

Page

Jurisdiction and Bail Status ......................................................... 1

Questions Presented .................................................................. 2

Statement of Facts ................................................................... 2

A.  Mitchell's Relevant Background ............................................ 2

B.  Instant Offense Conduct ..................................................... 3

C.  The Proceedings Below ...................................................... 5

    1.  Federal Charges ......................................................... 5

    2.  Guilty Pleas Pursuant to a
       Written Agreement ..................................................... 5

    3.  Sentencing Proceedings .............................................. 7

       a.  Probation Officer's Position .................................... 7

       b.  Government's Position .......................................... 7

       c.  Mitchell's Position ............................................. 8

       d.  Sentencing Hearing ........................................... 8

Summary of Argument ................................................................ 16

Argument ............................................................................. 17

A.  The District Court Did Not Plainly Err by
    Supposedly Failing to Consider Certain Rights
    That Mitchell Waived in His Plea Agreement ............................. 17

    1.  Standard of Review ..................................................... 17

    2.  There Was No Error—Let Alone
       Obvious Error—as Alleged ........................................... 18

    3.  There Also Was No Prejudice or Adverse
       Effect on the Integrity of the Sentence .......................... 22

B.  The Court Also Did Not Plainly Err by Supposedly
    Failing to Give Any Consideration to Mitchell's
    Injuries Because They Were Self-Inflicted .............................. 24

    1.  Standard of Review ..................................................... 24

    2.  There Again Was No Error—or
       Obvious Error—as Alleged ........................................... 24

    3.  There Also Was No Prejudice or Adverse
       Effect on the Integrity of the Sentence .......................... 27

Conclusion ............................................................................ 29

Certificate of Compliance

# TABLE OF AUTHORITIES

Cases:

*Eddings v. Oklahoma*,
  455 U.S. 104 (1982) .......................................... 26
*Greer v. United States*,
  141 S. Ct. 2090 (2021) ................................. 22, 28
*Puckett v. United States*,
  556 U.S. 129 (2009) .......................................... 18
*United States v. Carty*,
  520 F.3d 984 (9th Cir. 2008) (en banc) ........ 19, 20
*United States v. Gonzalez-Melchor*,
  648 F.3d 959 (9th Cir. 2011) ........................... 21
*United States v. Gutierrez-Sanchez*,
  587 F.3d 904 (9th Cir. 2009) ........................... 26
*United States v. Hernandez-Gomez*,
  2023 WL 1097256 (9th Cir. Jan. 30,
  2023) (unpublished) ......................................... 21
*United States v. Rizk*,
  660 F.3d 1125 (9th Cir. 2011) ......................... 18
*United States v. Sanchez*,
  2022 WL 16945894 (9th Cir. Nov. 15,
  2022) (unpublished) ......................................... 22
*United States v. Valencia-Barragan*,
  608 F.3d 1103 (9th Cir. 2010) .................... 18, 24
*United States v. Young*,
  470 U.S. 1 (1985) ............................................. 29
*United States v. Zalapa*,
  509 F.3d 1060 (9th Cir. 2007) .............. 18, 22, 27

Statutes:

18 U.S.C. § 922(g)(1) ................................... 1, 5, 23
18 U.S.C. § 922(k) ................................................. 3
18 U.S.C. § 922(q)(2)(A) ....................................... 3

18 U.S.C. § 3231                                                      1
18 U.S.C. § 3553                                                 10, 13
18 U.S.C. § 3553(a)                    6, 7, 12, 13, 19, 20, 24, 27
28 U.S.C. § 1291                                                      1
Cal. Penal Code § 211                                            2, 3
Cal. Penal Code § 245(b)                                            3
Cal. Penal Code § 12022.5                                          2

Sentencing Guidelines:

USSG § 2K2.1(a)(4)(A)                                              13
USSG § 2K2.1(b)(6)(B)                                              13
USSG § 3E1.1(b)                                                13, 21
USSG § 5K2.0                                   6, 7, 12, 15, 18, 20

Rules:

Fed. R. App. P. 4(b)(1)(A)                                          1
Fed. R. Crim. P. 11(c)(1)(B)                            6, 11-12, 20

Miscellaneous:

*Online Collins English Dictionary* (2023)                        25

iii

## No. 22-50097

# United States Court of Appeals

### FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

PLAINTIFF-APPELLEE

*v.*

NATHANIEL MITCHELL,

DEFENDANT-APPELLANT

*On Appeal from the United States District Court
for the Southern District of California
21CR1456-LAB*

### JURISDICTION AND BAIL STATUS

The district court had jurisdiction under 18 U.S.C. § 3231, as Mitchell was charged with two counts of being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1). Excerpts of Record (ER)-139-41. After his conviction of both counts by guilty plea, the court entered judgment in April 2022, sentencing Mitchell to 87 months in prison on each count (concurrent) and 3 years of supervised release. ER-3-11. Mitchell then timely appealed. Fed. R. App. P. 4(b)(1)(A); ER-142. Jurisdiction in this Court rests upon 28 U.S.C. § 1291. Mitchell is presently still in custody, and his projected release date is August 15, 2028. Appellant's Opening Brief (AOB) 3.

1

## QUESTIONS PRESENTED

A.    Whether the district court plainly erred, by supposedly failing to give any consideration to the rights that Mitchell waived pursuant to his plea agreement.

B.    Whether the court also plainly erred, by supposedly failing to give any consideration to injuries that Mitchell inflicted upon himself while fleeing from police.

## STATEMENT OF FACTS

### A.    <u>Mitchell's Relevant Background</u>

Mitchell is a 53-year-old United States citizen born and raised in San Diego.  Presentence Report (PSR) 3, 13.  After growing up in a strict Jehovah's Witness household, he moved out when he was a teenager and moved in with his best friend.  PSR 13.  Upon leaving high school before finishing his senior year, he joined a street gang and began abusing alcohol and crack cocaine.  PSR 14, 15.

Not surprisingly, decades of trouble with the law then ensued —including the following series of violent or gun-related offenses:

- March 1990—attempted robbery conviction under Cal. Penal Code § 211 (age 19): Mitchell tried to rob a man after striking "him in the head with a wine cooler bottle," PSR 8-9 (sentence: 3 years in state prison);

- November 1990—robbery conviction with use of a firearm enhancement under Cal. Penal Code §§ 211 & 12022.5 (age 20): Mitchell "stuck a gun in [the victim's] mouth, took his bracelet and ring, [and] then hit him on the head with his gun," PSR 9-10 (sentence: 7 years in state prison);

2

● October 1999—robbery and assault with firearm convictions under Cal. Penal Code §§ 211 & 245(b) (age 29): after the victim simply said "What's up?" to Mitchell, Mitchell replied, "I get real nervous when people say what's up and I don't know them," pulled out a gun, pointed it at the victim, and told him to hand over his money, PSR 10 (sentence: 12 years in state prison); and

● November 2013—possession of a firearm lacking a serial number and possession of a firearm in school zone under 18 U.S.C. §§ 922(k) & 922(q)(2)(A) (age 43): during a traffic stop, a bag holding a ".38 caliber Cobra handgun loaded with two rounds of ammunition" and lacking a serial number fell from Mitchell's person as he stepped out of the car, PSR 11 (sentence: 60 months and 40 months, consecutive, in federal prison).

B.    Instant Offense Conduct

Mitchell finished his prison time for the last of the convictions listed above in November 2020. *Id.* But despite having just served a combined 8 years on those charges, he then committed *another* gun-related offense only three months later. And that offense ended up having far worse consequences than just more time in custody.

On Thursday, January 28, 2021, around 11:30 a.m., San Diego police officers responded to the intersection of College Avenue and Montezuma Road to investigate a report of an "unresponsive individual behind the wheel of his vehicle." PSR 4. Given its proximity to San Diego State University, that intersection tends to be very busy —especially with students. ER-27. And since it was winter, school also happened to be in session at the time. *Id.*

3

When officers approached the subject car, Mitchell appeared to be asleep at the wheel. PSR 4. As it turned out, he was intoxicated with alcohol at the time, ER-22, 98, even though one of his conditions of supervised release from his last convictions was to completely abstain from alcohol. ER-43, 58. One officer tried to wake him by yelling through the front passenger's window but had no success. PSR 4. That officer then walked around to the driver's side window, which was open, reached in to place the car in park, and shook Mitchell's shoulder. *Id.* As he did so, the officer noticed a firearm in plain view on the floor of the car between Mitchell's feet. *Id.* At that point, Mitchell finally woke up, so the officer commanded him to exit the car and not touch the firearm. *Id.* While Mitchell appeared to be startled, he initially acted as though he was going to get out of the car by unbuckling his seat belt. *Id.*; ER-17.

Seconds later, however, Mitchell suddenly drove off and fled the scene at "over 70 miles per hour." ER-17. As he did, he threw the firearm out the window. PSR 4. But just a few blocks later, his effort to escape ended when he crashed into a parked car. *Id.* His vehicle rolled over several times, PSR 5; and since he was no longer wearing a seatbelt, Mitchell was ejected through the windshield onto the pavement. PSR 4. When the police caught up to him,

Mitchell was unconscious with life-threatening injuries. *Id.* He was transported to a hospital, *id.*, where he underwent surgery for fractured vertebrae, multiple skull fractures, and major soft tissue damage to the top of his head. PSR 14-15. He also suffered severe nerve damage, had to relearn how to walk, and is now required to walk with a cane. PSR 15.

The firearm that Mitchell threw from his car was recovered and found to be a tan Glock 9mm handgun. PSR 5. It also was a so-called "ghost gun," meaning it had a polymer handle, a threaded barrel, but did not have a serial number. *Id.* The firearm was "loaded at the time it was recovered, with one round in the chamber and 10 rounds of ammunition in the magazine." *Id.*

C.   The Proceedings Below

1.   Federal Charges

Mitchell was soon charged with two counts of felon in possession of ammunition, 18 U.S.C. § 922(g)(1). ER-139-41.

2.   Guilty Pleas Pursuant to a
Written Agreement

Thereafter, his counsel below secured an extremely generous plea agreement from the government. ER-125-38. By its terms, Mitchell agreed to waive the standard litany of trial-related rights, ER-128 (e.g., the right to a jury trial, the right to confront and cross-examine adverse witnesses, and the right to testify and present his

5

own evidence); and plead guilty to both counts as charged.  ER-125.

In exchange, the government agreed for purposes of sentencing to

recommend a 1-level downward departure for a combination of

circumstances under USSG § 5K2.0, ER-132; a 4-level downward

variance under 18 U.S.C. § 3553(a) "due to the injuries he sustained

during the . . . instant offense as well as his incarceration with these

injuries during the global COVID-19 pandemic," ER-133; *and* the

low end of the resulting Guidelines range.  *Id.*

However, since the plea agreement was expressly negotiated

"pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B)," ER-

131, those recommendations were not binding on the district court.

Fed. R. Crim. P. 11(c)(1)(B) (providing that a negotiated sentencing

request "does not bind the court").  The plea agreement itself even

warned Mitchell as much. ER-131 ("The sentence is within the sole

discretion of the sentencing judge who may impose the maximum

sentence provided by statute. . . . Any recommendation by the Gov-

ernment at sentencing also is not binding on the Court.").

The agreement also included a generous appellate waiver:

Mitchell could appeal any "custodial sentence above 51 months."

ER-135.  Given that his criminal history category was V, PSR 12;

and that his resulting Guideline range without the USSG § 5K2.0

and 18 U.S.C. § 3553(a) reductions turned out to be 70-87 months,

that already assured him of an appeal even if the court ended up denying those concessions while still imposing a low-end or within-range Guideline sentence.

### 3. Sentencing Proceedings

#### a. Probation Officer's Position

In January 2022, the presentence report issued. After finding far more aggravating than mitigating circumstances in the case, the probation officer recommended a custodial term of 95 months. PSR 20; PSR 19 ("Mitchell's violent tendencies and proclivity towards firearms make him a dangerous individual."); PSR 20 ("Despite the collateral consequences the defendant has endured based on the injuries he sustained during the commission of the instant offense, there are too many aggravating factors in this case . . . to warrant a low-end of the [G]uideline range recommendation.").

#### b. Government's Position

Consistent with its promises in the written plea agreement, the government instead recommended just 41 months in custody. ER-88. That recommendation resulted from inclusion of a 1-level downward departure to the Guideline calculations for a combination of circumstances under USSG § 5K2.0; a 4-level downward variance under 18 U.S.C. § 3553(a); and urging the low end of the Guidelines as so calculated. *Id.*

7

c.   Mitchell's Position

Like the government, Mitchell also recommended 41 months in custody.  ER-108, 109-114.  And to bolster that recommendation, he submitted medical records reflecting the extent of his injuries that resulted from his attempt to flee police on the day of his arrest, plus letters of support from some relatives.  ER-85-86, 90-107.

d.   Sentencing Hearing

In April 2022, an exhaustive sentencing hearing took place spanning over 70 pages of transcript.  ER-12-84.  At the outset, the district court recited all the parties' filings that it reviewed before sentencing, and they included the plea agreement.  ER-14-15.  The court then resolved objections to the presentence report that are not relevant on appeal.  ER-15-20.

Thereafter, the court engaged both parties in comprehensive argument over their shared 41-month custodial recommendation. During those colloquies, five recurring themes emerged.

First: the court made no secret that it viewed the offense as highly aggravated, since Mitchell committed another gun crime just three months after getting out of prison for his last such offenses; he recklessly endangered the public with his flight from police at a high speed in a busy area and ensuing crash; he was intoxicated at the time, despite having a supervised release condition from his last offenses to not use alcohol; *and* he had a "ghost gun" that could not

even be traced.  See, e.g., ER-24 ("[W]hat hasn't changed . . . [is] the inclination to stay away from guns."); *id.* ("[and] how do you explain . . . this reckless, life-endangering chase"); *id.* ("He feigns that he is getting out of the car, then he zips away and engages the police.  [¶] You know, thank goodness nobody else was injured.  Mr. Mitchell's injuries are bad enough, but imagine if he had hit a car with a family in it[.]"); ER-26 ("[H]e is under the influence such that he hits another car, rolls over three times and does these great injuries to himself."); *id.* ("[I]t is utter disregard for people that were on the street at that time."); ER-25 ("In this case it is what they call a ghost gun which now has a sinister connotation because it can't be traced and is put together by parts that are not traceable."); ER-30 ("[H]ere is a fellow who is on supervised release for essentially the same offense[.]  [¶]  So now he has doubled down.  He has got a ghost gun.  He engages the police in a scary life-threatening chase; not only his life but, as I said, others."); ER-27-28 ("I mean, honestly, I don't see much mitigation in any aspect of that scenario.").

Second: the court also made clear that it saw the facts of this crime to be far worse than Mitchell's last gun crimes—for which he received consecutive 40- and 60-month terms—such that it made no sense to now give him the same or an even *lower* sentence.  See, e.g., ER-30 ("[C]ompared to this offense and the facts here, the facts of

the other offense were pretty benign. [The last one] is a vehicle stop and he is walking away. And the gun drops out and the cops find it, and say okay. And he got 100 months for that, right?"); ER-47 ("This, on its face, is way worse than the offense[s] for which he got 100 months."); *id.* ("[T]he circumstances of that case didn't involve endangering anybody at all."); ER-30 ("And you and the government think, oh, we will fix his wagon, give him, what, 60 months less than what he got before for the same thing, or relatively the same thing. [¶] Explain how that comports with promoting respect for the law, just punishment, any of the 3553 factors because, frankly, I am in a fog."); ER-47 ("Ordinarily . . . we think if somebody does the same thing after being sanctioned for it that the sanction increases. That the punishment goes up if you continue to commit anti-social felony behavior. Here he goes from 100 months down to—what is the government's recommendation, 41 months? . . . I don't understand how that comports with, in any way, just punishment, promoting respect for the law, deterrence.").

Third: the court did recognize the gravity of Mitchell's injuries from his ill-fated attempt to flee police, and it expressed empathy in that respect. See, e.g., ER-17-18 ("[T]he chase is, even on paper, a very scary chase . . . which ends up, of course, in crippling injuries to the defendant."); ER-35 ("I am sympathetic to him that he walks

with a cane now, that he had to go through everything."); ER-54-55 ("[L]ook, none of this is about a lack of compassion for a fellow who is seriously injured, even though he caused the injuries to himself. People engage in reckless conduct all the time that results in injury, and I feel badly for them.").

Fourth: still, the court did not regard those injuries as truly mitigating, since they were self-inflicted and Mitchell would receive free care in custody. See, e.g., ER-26 ("[I]t is he that took the risk. 70 miles an hour trying to get away from the police."); ER-35 ("[T]he bottom line is . . . he did this to himself."); ER-52 (disagreeing that one who "engages in a reckless, life-threatening chase from police is entitled to a mitigated sentence because he engaged in a reckless, life-threatening chase from police where he hurts himself"); ER-64 ("[H]e is the architect of his own fate here. He is the one that made the decision to feign giving up, feign submitting to arrest. And then taking off in a very dangerous chase. . . . [I]f he wants to know who is responsible for his physical condition, all he need do is look in the mirror."); ER-54 (receiving no information from the prosecutor that the "medical treatment at the federal Bureau of Prisons, is worse or inferior to what Medi[-C]al provides").

Fifth: finally—and not surprisingly, given all the foregoing— the court exercised its discretion under Federal Rule of Criminal

11

Procedure 11(c)(1)(B) to reject the joint request for a 1-level downward USSG § 5K2.0 departure and 4-level downward 18 U.S.C. § 3553(a) variance (which would have led to a Guideline range with 41 months the low end). ER-50 ("I don't agree with the plea agreement, I reject it as a matter of fact."); ER-57 ("The court understands that is a discretionary choice. Here, I just don't find that it is warranted."). By way of explanation, while the prosecutor noted that the 1-level departure was based in large part on the "appellate waiver," ER-56, the court found that waiver "no huge concession" since it was so favorable to Mitchell (again, he could still appeal if his sentence exceeded 51 months—which was already well below the resulting Guideline range without the departure and variance). ER-57; ER-48 (also finding that in that respect, this waiver did not promote "finality," which is "[p]erhaps the most important benefit of plea bargaining"). In turn, while the prosecutor argued that the 4-level variance was for Mitchell's "medical hardships due to the injuries he sustained," the court chose not to give such weight to the injuries since they were all self-inflicted in a reckless and unlawful attempt to flee from law enforcement. ER-51-52.

After having exhaustively engaged the parties thus, the court proceeded to impose sentence. It first calculated the applicable Guidelines as follows:

12

| | |
|---|---|
| Base Offense Level (USSG § 2K2.1(a)(4)(A)) | 20 |
| Possession of Ammunition in Connection with Another Felony (USSG § 2K2.1(b)(6)(B)) | +4 |
| Acceptance of Responsibility (USSG § 3E1.1(b)) | -3 |
| Adjusted Offense Level | 21 |
| | |
| Criminal History Category: | V |
| | |
| Resulting Guidelines Range: | 70-87 months |

ER-56-57. The court then imposed the high end—87 months—after a comprehensive analysis of the 18 U.S.C. § 3553(a) factors:

> Turning to the 3553 factors with that range in mind. I think this [crime] is just horrific, I mean, by any measure. . . .
>
> Multi-time violent convicted felon, on supervised release for illegal firearm, now has a ghost gun. Now has a ghost gun. When he is caught, you know, red-handed, the gun is at his feet. He is under the influence, asleep in his car. A guy that tells me he is working full time and being dutiful about supervised release conditions. Not violating any of them. Forget about the fact that he has got a gun and ammunition and he is under the influence when he admits he has got an alcohol condition.
>
> Then he feigns that he is going to get out [of his car]. So the cops think, okay, this is going to go down pretty easy. He is going to get out, and we will arrest him and take this gun. He will go into custody.
>
> No, no, no, no. Instead, a 70-mile an hour chase through an area that we all know is highly populated, all times of day and night, frankly. I mean, students are always out and about. Taco place right across the way that is very popular. . . .
>
> . . .

Yeah, College says it all. Montezuma and College. Very, very close to campus with constant traffic. And this, at 11:30, January 28th when school is in session.

Very violent. The crash causes his car to topple, that does very serious injury to him. Thank goodness, thank goodness no one was hit, killed. And that the only injury was to the guy that, you know, brought the circumstances about that caused the injury.

I see this . . . as a continuation of very reckless—at a minimum reckless behavior on the part of the defendant.

. . .

So I find this to be a very serious violation. It is not a run-of-the-mill felon and ammunition case or felon in possession of firearm. The last one was. The last one was. [The gun] [f]alls out, he doesn't resist the police at all. There is no chase or anything like this. But this one is very different in kind. And the nature and circumstances of this are very, very aggravated.

Need for deterrence. I think that is at its pinnacle in this case. This is a fellow who has not been deterred. . . .

I would have thought that after 2013 and paroling out or being released on supervised release after a 100-month term—which is a long term—that he would have said, that is it with guns. I don't want to be anywhere around a gun.

. . .

There is a need for deterrence here. [Defense counsel] acknowledges that part of just punishment and deterrence is incapacitation of dangerous people. I put Mr. Mitchell in that category. He is a dangerous person. As long as he can drive a car or possess a firearm he is dangerous. And he has shown an inclination in both of those contexts to be very, very dangerous in his behavior.

14

Promoting respect for the law. As I said, this isn't absolute, and certainly there are circumstances where a sentence doesn't have to be as long or longer than a previous sentence. But most people think if you do the same thing, if you commit the same crime and you come back, your punishment is probably going to be longer; not shorter. Not less than half of what you got before. How does that promote respect for the law? That is just like, you know, Ollie Ollie oxen free.

. . .

So with all respect, . . . even taking into consideration the defendant's situation, which I feel badly for him. No one can celebrate the fact that he has to walk with a cane now and that he has gone through all of these injuries and that it is painful.

I do not find, necessarily, that any of that abates by whether he is in custody or not in custody. I think he is going to be in the same pain he is going to be in. No one has convinced me that the Bureau of Prisons can't properly manage his conditions while he is in. Their medical facilities—including Springfield, which I visited personally, and I know they have state-of-the-art medical care.

. . .

The court finds, therefore, after looking at everything, that a sentence within the Guidelines is warranted but it should be the upper end. I impose 87 months.

ER-57-63.

After Mitchell was advised of his right to appeal, ER-68, his counsel made two substantive objections to his sentence: she said "it violates the parsimony principle," and she objected to the court's discretionary refusal to grant the 1-level downward USSG § 5K2.0 departure. ER-70. No procedural objections were lodged.

This appeal from the sentence then followed.

## SUMMARY OF ARGUMENT

Neither of the claims of procedural error at sentencing raised for the first time on appeal survives plain-error review.

First, the court did not plainly err by supposedly failing to consider certain rights that Mitchell waived in his plea agreement. In point of fact, the court stated for the record that it *had* reviewed the plea agreement, and this Court takes judges at their word. Further, the defense never even mentioned the plea agreement waivers in their pitch at sentencing; so, the court was not obliged to make more of a record about them to begin with. There was thus no error, let alone obvious error. But even if error did occur, reversal is still not justified as Mitchell cannot show prejudice or an adverse effect on the integrity of his sentence: the boilerplate waivers that he notes were of very little, if any, value on the facts of his case, and there is no reasonable probability his sentence would have been any lower had the court actually given them more attention.

Second, the court also did not plainly err by supposedly failing to give any consideration to injuries Mitchell suffered while fleeing from police. The record again clearly shows otherwise, as the court in fact gave repeated consideration to the injuries. And though the court ultimately chose not to afford any mitigation on that basis since the injuries were self-inflicted, that decision was well within the court's unfettered discretion to weigh facts at sentencing.

16

**ARGUMENT**

A.  The District Court Did Not Plainly Err by
    Supposedly Failing to Consider Certain Rights
    <u>That Mitchell Waived in His Plea Agreement</u>

Given how thoroughly the court treated the issues actually raised by the parties at sentencing, Mitchell has to stretch far to allege grounds of error.  So, for the first time on appeal, he makes two claims of "procedural error," AOB 4, that he did not preserve below.  First, he claims that in rejecting the sentencing recommendations in his plea agreement, the court erred by failing to give "any consideration" to certain rights he waived in that agreement: "(1) the right to collaterally attack every aspect of the conviction and sentence [ER-134], (2) the right to collaterally attack by making 'any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged' [*id.*], (3) the right to any impeachment information [ER-129] [and] the right to withdraw his guilty plea or to file collateral attack based on the existence of impeachment information [*id.*], and (4) the right to challenge terms of the forfeiture addendum [ER-134]."  AOB 22.  We disagree.

1.  <u>Standard of Review</u>

Mitchell asserts that review is de novo, without proof that he ever preserved this issue.  AOB 19.  In actuality, Mitchell did not

17

raise this claim of procedural error at sentencing—when something might have been done about it. ER-70 (only objecting substantively to a violation of "the parsimony principle" and the refusal to grant a USSG § 5K2.0 departure). Thus, review is for plain error only. *United States v. Valencia-Barragan*, 608 F.3d 1103, 1108 n.3 (9th Cir. 2010) ("Because [defendant] raised no issue of procedural error by the district court [at sentencing], plain error review applies."). So, Mitchell must show (1) error that (2) was plain, (3) affected substantial rights, and (4) seriously affected the fairness, integrity, or reputation of the proceedings. *United States v. Rizk*, 660 F.3d 1125, 1132 (9th Cir. 2011). Proving all that "is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 134 (2009).

2. There Was No Error—Let Alone
   Obvious Error—as Alleged

This claim fails the first two prongs of plain-error review, as there was no error and certainly no obvious error. *United States v. Zalapa*, 509 F.3d 1060, 1064 (9th Cir. 2007) (plain error is "so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection"). In all honesty, it is hard to discern exactly what the claim of error is: since Mitchell phrases it in three different ways, it is somewhat of a moving target. Regardless, none of the three characterizations of error has merit.

First, Mitchell at times claims that the court failed to consider *altogether* the fact that he waived the rights listed earlier in his plea agreement. See AOB 21 ("This was error because the court cannot refuse to outright consider a relevant fact to sentencing."); AOB 23 ("[T]he court did not consider these waivers."); AOB 26 (noting "the court's refusal to even consider Mr. Mitchell's waiver of rights in the plea agreement"). But that is belied by the record. At the start of the sentencing hearing, the court listed every filing that it reviewed for purposes of sentencing, and the plea agreement was one of them. ER-15 ("I looked at the plea agreement."). Since the agreement contained every waiver that Mitchell lists on appeal, AOB 22; and since this Court takes a judge "at his word" in terms of his sentencing rulings, *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc), the representation that the judge read the agreement here conclusively refutes any suggestion that it did not consider the contents of that agreement—the subject waivers included.

(Also, it bears noting that at no point during sentencing did Mitchell even bring the fact of the waivers to the judge's attention. *Carty* made clear that a judge "need not tick off each of the § 3553(a) factors to show that is has considered them," *id.* at 992; and a judge is only obliged to make a record if a party actually "raises a specific, nonfrivolous argument tethered to a relevant § 3553(a) factor in

support of a requested sentence." *Id.* at 992-93. Since Mitchell never made any argument based on his plea agreement waivers, then, any complaint he now raises about the court's alleged failure to consider them is especially misplaced.)

Second, at other times Mitchell claims the court erred by rejecting the *entire* plea agreement, which he says it could not do. See AOB 23 ("[T]he court rejected the entire plea agreement 'as a matter of fact.'"); *id.* (noting the "total rejection of the plea agreement"). But that also mischaracterizes the record. At no point at sentencing did the court say it was rejecting the "entire" or "total" agreement; the court simply said it was rejecting "the plea agreement." See, e.g., ER-51. And given that the focus of the court's colloquy with each party leading up to that and similar remarks was the propriety of the 1-level USSG § 5K2.0 departure and the 4-level 18 U.S.C. § 3553(a) variance set forth in the agreement, ER-21-49, the court's "rejection" of the agreement is most reasonably read in context as only a rejection of *those* specific requests—which, as even Mitchell concedes, the court had a right to do. AOB 23 (citing Fed. R. Crim. P. 11(c)(1)(B)). Also, the court never asked Mitchell if he wanted to withdraw his guilty plea, which one would expect upon a rejection of the entire agreement; and the court *did* enforce other terms of the agreement, e.g., the government's promise to urge a full 3-level

downward departure for acceptance of responsibility if applicable—which can only be granted on motion of the prosecutor. ER-56, 131; see USSG § 3E1.1(b). Accord *United States v. Hernandez-Gomez*, 2023 WL 1097256, *2 (9th Cir. Jan. 30, 2023) (unpublished) (also finding no error when the same district court similarly "reject[ed] the plea agreement" in another case).

Finally, at other times still, Mitchell argues that the court erred by criticizing the appellate waiver in the plea agreement as too generous. See AOB 24 ("in the court's opinion, the trigger for the appellate waiver was too low"); AOB 25 ("the court went on to find the agreement 'antithetical to the purpose of a plea agreement' which is to promote finality"). Yet aside from the fact that this argument directly negates the stated premise of this claim—by showing the court *did*, in fact, give "consideration [to] the rights given up by Mr. Mitchell," AOB 21—it also fails to show error. The waiver was actually very generous, since it allowed for appeal of any custody over 51 months, which—given Mitchell's criminal history category and undisputed Guideline calculations—*already* resulted in a high likelihood of appeal; and the law does not bar a judge from giving his honest opinion of a plea agreement term. To that point, the authority that Mitchell cites is inapposite. While *United States v. Gonzalez-Melchor*, 648 F.3d 959 (9th Cir. 2011), did hold that a

judge can't actually *negotiate* an appellate waiver with a defendant at sentencing, that did not happen here—the 51-month waiver had already been negotiated by the parties well before then. And while *United States v. Sanchez*, 2022 WL 16945894 (9th Cir. Nov. 15, 2022) (unpublished), found error where a judge explicitly increased the "sentence from 12 to 18 months after learning that [defendant] had not waived his right to appeal the sentence," *id.* at *1, that also did not happen here. On the contrary, this court expressly said its concerns with Mitchell's appellate waiver would have absolutely "*no* effect on what the exposure is." ER-51 (emphasis added).

Thus, the court here did not commit any error—let alone error "so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Zalapa*, 509 F.3d at 1064. On that basis alone, the first claim on appeal should be rejected.

### 3. There Also Was No Prejudice or Adverse Effect on the Integrity of the Sentence

But even assuming an alleged error did occur, this claim still fails the last two prongs of plain-error review. At the third prong, Mitchell must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 141 S. Ct. 2090, 2096 (2021). That he cannot do.

When all is said and done, the waivers that Mitchell purports to characterize as so valuable to the government were anything but.

To the extent that he waived any right to attack his "conviction" in the plea agreement, AOB 22, he never had a plausible challenge to begin with. As the court below noted, he was caught "red-handed:" a "multi-time violent convicted felon," asleep at the wheel of his car, in broad daylight in a busy intersection, with no passenger, and a loaded ghost gun literally "at his feet." ER-58. No amount of "impeachment information," which he also waived, AOB 22, could have done anything to negate those facts; nor does Mitchell identify a single case ever to find (or suggest) that an 18 U.S.C. § 922(g)(1) conviction on such facts could be remotely "unconstitutional," which was another challenge that he waived. AOB 22. To the extent that Mitchell also waived any right to challenge his "sentence," AOB 22, that ended up being of no value: this appeal still ensued. Finally, to the extent that Mitchell waived any right to challenge the terms of any forfeiture order in this case, *id.*, that also was unremarkable: the only items so forfeited—the ghost gun he threw from his car and its ammunition, ER-9-10—are things that he clearly has no right to possess as a *convicted felon*. Any suggestion that Mitchell might have received a lower custodial sentence had the court more fully considered these particular waivers, then, is a non-starter.

Last, for all the same reasons, any alleged error did not have an adverse impact upon the fairness or integrity of the sentence.

B.    The Court Also Did Not Plainly Err by Supposedly
      Failing to Give Any Consideration to Mitchell's
      <u>Injuries Because They Were Self-Inflicted</u>

In his other claim of procedural error raised for the first time on appeal, AOB 27-30, Mitchell argues that the court "categorically refused to consider [his] injuries because they were self-inflicted." AOB 27.  That claim also fails.

1.    <u>Standard of Review</u>

For the same reasons noted earlier, pp. 17-18, *supra*, review is only for plain error.  *Valencia-Barragan*, 608 F.3d at 1108 n.3.

2.    There Again Was No Error—or
      <u>Obvious Error—as Alleged</u>

This claim also fails the first two prongs of plain-error review, as there was again no error and—at the least—no obvious error. According to Mitchell, the court rejected "out of hand" the parties' joint request of a 4-level 18 U.S.C. § 3553(a) variance for the severe injuries he suffered while fleeing police because the injuries were self-inflicted.  AOB 27-28 (citing ER-64).  As a result, he claims the court "categorically" refused to give those injuries any consideration for purposes of sentencing, contrary to law.  *Id.*  But as was true of his first claim on appeal, this claim also mischaracterizes the record and should thus be denied as well.

As a threshold matter, it is true that when the court ultimately denied the variance some 50 pages into the sentencing hearing

24

transcript, it used the idiom that Mitchell notes. ER-64 ("As far as the variance that is recommended, I just reject that out of hand."). It is also true that, in common parlance, to "reject something out of hand" means to "reject an idea or suggestion without hesitating and without discussing it first." *Online Collins English Dictionary* (2023) (https://www.collinsdictionary.com/us/).

But be that as it may, the record shows that the court actually *did*, in fact, discuss and consider Mitchell's injuries prior to its ruling—thoroughly, at that. As noted earlier, those injuries were a recurring theme in the court's extensive colloquy with each party before it formally pronounced sentence; and the court's comments show it gave ample consideration to the issue. See, e.g., ER-17-18 ("[T]he chase is, even on paper, a very scary chase . . . which ends up, of course, in crippling injuries to the defendant."); ER-35 ("I am sympathetic to him that he walks with a cane now, that he had to go through everything."); ER-54-55 ("[L]ook, none of this is about a lack of compassion for a fellow who is seriously injured, even though he caused the injuries to himself. People engage in reckless conduct all the time that results in injury, and I feel badly for them."). The court also expressly cited the injuries while formally pronouncing the 87-month sentence. ER-62 ("So with all respect, . . . even taking into consideration the defendant's situation, which I feel badly for

him. No one can celebrate the fact that he has to walk with a cane now and that he has gone through all of these injuries and that it is painful."). Last, elsewhere in the record, the court also made clear it reviewed the "medical records . . . showing [Mitchell's] condition following the collision," ER-14, and even "made annotated notes" to the records. ER-63-64. Any claim that the court "categorically refused to consider [his] injuries," AOB 27, is thus demonstrably false.

While the court did not end up reducing the sentence for the injuries on the basis they were self-inflicted, as further noted earlier; and while that obviously was not the result Mitchell wanted, there also isn't anything unlawful about that. It is blackletter law that so long as a judge does consider facts offered in mitigation at sentencing, how the judge then chooses to weigh those facts is committed to its sole discretion. See, e.g., *United States v. Gutierrez-Sanchez*, 587 F.3d 904, 908 (9th Cir. 2009) ("The weight to be given the various factors in a particular case is for the discretion of the district court."); cf. *Eddings v. Oklahoma*, 455 U.S. 104, 114, 115 (1982) (while a sentencer cannot "refuse to consider . . . any relevant mitigating evidence" offered by a defendant, it "may determine the weight to be given [that] evidence"). Here, that the court ultimately chose not to reduce the sentence for injuries to Mitchell caused by *his* unlawful decision to flee police at a high rate of speed on busy

streets by a college—thereby endangering untold others—was well within its sound discretion. See, e.g., ER-26 ("[I]t is he that took the risk. 70 miles an hour trying to get away from the police."); ER-52 (disagreeing that one who "engages in a reckless, life-threatening chase from police is entitled to a mitigated sentence because he engaged in a reckless, life-threatening chase from police where he hurts himself"); ER-64 ("[H]e is the architect of his own fate here. He is the one that made the decision to feign giving up, feign submitting to arrest. And then taking off in a very dangerous chase.").

Once again, then, the court did not commit error, let alone error "so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *Zalapa*, 509 F.3d at 1064. Actions speak louder than words; and while the court did say it was rejecting the joint request for a 4-level variance under 18 U.S.C. § 3553(a) "out of hand" at the time it pronounced sentence, ER-64, this record shows it actually made that decision only *after* thorough argument and consideration of the issue. So, as with the first claim on appeal, this claim should also be rejected for failure to surmount the first two prongs of plain-error review.

### 3. There Also Was No Prejudice or Adverse Effect on the Integrity of the Sentence

But even assuming error as alleged, this claim still fails the last two prongs of plain-error review.

27

Under the third prong, Mitchell must again show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer*, 141 S. Ct. at 2096. He can't do that for this claim either. Even if the court had given the maximum possible solicitude to the injuries he incurred in committing this offense, the aggravating factors still overwhelmingly outweighed the mitigating factors. This was his *fifth* gun-related offense, see PSR 11; the gun at issue was a "ghost gun," meaning that it and its constituent parts were untraceable, ER-25; despite being given the opportunity, Mitchell could not come close to providing a plausible explanation for why he possessed a gun yet again, just three months after being released from prison for his last gun-related offenses, compare ER-40 (claiming without evidence "there was information put out about me that I came in here and testified on someone") with PSR 11 (proffering the *same* excuse for his last convictions: "Mitchell advised he purchased the handgun earlier that day for $150 after being labeled a 'snitch' by Lincoln Park gang members."); and his reckless flight from police on surface streets at 70 miles per hour endangered untold numbers of the public, college students included. ER-58-59. Given all that, plus the fact that Mitchell will have free medical care in custody, there is no reasonable probability his sentence would have been any lower absent the alleged error.

Finally, there also was no adverse effect on the fairness of the sentence for all the same reasons—especially since the 87-month custodial term for this offense was not an unreasonable escalation from the consecutive 40- and 60-month terms that Mitchell received for his last gun-related crimes. See PSR 11.

### CONCLUSION

In sum, Mitchell has not shown that any errors in his sentencing were a "miscarriage of justice" warranting the "'extravagant protection'" of discretionary correction under plain-error review. *United States v. Young*, 470 U.S. 1, 15, 16 (1985) (reversal for plain error is meant only for "particularly egregious errors"). As a result, the judgment should be affirmed.

Respectfully submitted,

RANDY S. GROSSMAN
  *United States Attorney*

DANIEL E. ZIPP
  *Assistant U.S. Attorney*
  *Chief, Appellate Section*
  *Criminal Division*

s/MARK R. REHE
  *Assistant U.S. Attorney*

JUNE 13, 2023.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  | 22-50097

I am the attorney or self-represented party.

**This brief contains** | 6,863 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

( • ) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

  ( ) it is a joint brief submitted by separately represented parties;

  ( ) a party or parties are filing a single brief in response to multiple briefs; or

  ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [         ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Mark R. Rehe        **Date** | Jun 13, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/2018*