**NO. 22-50097**

_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**NATHANIEL MITCHELL,**

Defendant-Appellant.
_____

Appeal from the United States District Court
for the Southern District of California
Honorable Larry A. Burns, Presiding
U.S.D.C. No. 21-cr-01456-LAB-1
_____

**APPELLANT'S REPLY BRIEF**
_____

Zandra Luz Lopez
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467
Zandra_Lopez@fd.org

Attorneys for Defendant-Appellant

TABLE OF CONTENTS

INTRODUCTION ........................................................................ 1

ARGUMENT ............................................................................ 2

I.    The court rejected the plea agreement as a matter of fact, denying any consideration of the rights given up by Mr. Mitchell. ...................................................... 2

    A.    Mr. Mitchell preserved the issue for appeal. ............... 3

    B.    The district court categorically refused to consider the plea agreement under § 3553(a). ........................... 5

    C.    Even if the issue was not preserved, Mr. Mitchell meets the plain error prongs. ..................................... 10

II.    The court rejected consideration of Mr. Mitchell's self-inflicted injuries "out of hand." ............................................. 15

    A.    Mr. Mitchell preserved the issue for appeal. ............... 16

    B.    The district court categorically refused to consider injuries that are the natural consequence of a defendant's own conduct under § 3553(a). .................. 18

    C.    Even if the issue as not preserved, Mr. Mitchell meets the plain error prongs. ..................................... 21

CONCLUSION ........................................................................ 22

CERTIFICATE OF RELATED CASES ........................................... 23

CERTIFICATE OF COMPLIANCE

TABLE OF AUTHORITIES

**Federal Cases**                                                          **Page(s)**

*Concepcion v. United States,*
142 S. Ct. 2389 (2022) ............................................................... 21

*Holguin-Hernandez v. United States,*
140 S. Ct. 762 (2020) ............................................................. 3, 4

*New York State Rifle Pistol Ass'n, Inc. v. Bruen,*
142 S. Ct. 2111 (2022) ........................................................... 13

*Pepper v. United States,*
562 U.S. 476 (2011) .................................................... *passim*

*Rosales-Mireles v. United States,*
138 S. Ct. 1897 (2018) ................................................ 14, 15, 22

*United States v. Carty,*
520 F.3d 984 (9th Cir. 2008) ........................................ 5, 6

*United States v. Depue,*
912 F.3d 1227 (9th Cir. 2019) .................................... 10, 11

*United States v. Doe,*
705 F.3d 1134 (9th Cir. 2013) .................................... 12, 21

*United States v. Gasca-Ruiz,*
852 F.3d 1167 (9th Cir. 2017) ...................................... 9, 18

*United States v. Green,*
940 F.3d 1038 (9th Cir. 2019) ........................................... 11

*United States v. Hammons,*
558 F.3d 1100 (9th Cir. 2009) .................................... 10, 14

*United States v. Heredia,*
   768 F.3d 1220 (9th Cir. 2014) ............................................................. 12

*United States v. Hernandez-Gomez,*
   No. 21-50224, 2023 WL 1097256 (9th Cir. Jan. 30, 2023) ................... 8

*United States v. Joseph,*
   716 F.3d 1273 (9th Cir. 2013) ............................................................. 14

*United States v. Martinez,*
   850 F.3d 1097 (9th Cir. 2017) ....................................................... 16, 17

*United States v. Montoya,*
   48 F.4th 1028 (9th Cir. 2022) ............................................................... 8

*United States v. Sabillon-Umana,*
   772 F.3d 1328 (10th Cir. 2014) ..................................................... 15, 22

*United States v. Tapia,*
   665 F.3d 1059 (9th Cir. 2011) ....................................................... 11, 21

*United States v. Torres-Giles,*
   80 F.4th 934 (9th Cir. 2023) ................................................................. 8

*United States v. Waknine,*
   543 F.3d 546 (9th Cir. 2008) ........................................... 11, 12, 14, 22

**Federal Statutes**

18 U.S.C. § 922(g) ...................................................................................... 13

18 U.S.C. § 3553(a) .................................................................................. 1, 11

18 U.S.C. § 3553(a)(1) ................................................................................ 17

18 U.S.C. § 3661 ......................................................................................... 11

## Federal Rules

Fed. R. Crim. P. 51(a) ............................................................. 4, 16

Fed. R. Crim. P. 51(b) ............................................................ 3, 16

## INTRODUCTION

The district court categorically refused to consider evidence regarding Mr. Mitchell when conducting the 18 U.S.C. § 3553(a) analysis. First, because the district court did not agree with a term within the plea agreement (the appellate waiver), the court concluded as a factual matter, it would not consider any rights Mr. Mitchell gave up within that agreement. Second, because Mr. Mitchell's serious physical injuries were the natural consequences of his own conduct, the court excluded that evidence from sentencing consideration.

The district court's decision cannot be reconciled with the bedrock sentencing principle that "'[n]o limitation shall be placed on the information' a sentencing court may consider 'concerning the [defendant's] background, character, and conduct.'" *Pepper v. United States*, 562 U.S. 476, 488 (2011) (quoting what is now 18 U.S.C. § 3661). Nor is it consistent with the plain language of 18 U.S.C. § 3553(a), which requires sentencing courts to consider, among other things, "the history and characteristics of the defendant," "just punishment for the offense," as well as the need for the sentence "to afford adequate deterrence." *See Id.* § 3553(a)(1), (a)(2)(A), (B). Accordingly, the district

court's decision was legally erroneous.

These errors require this Court to reverse and remand. The government nevertheless attempts to evade the consequences of the district court's legal error in several ways. The government argues that Mr. Mitchell failed to preserve his objection to the district court's errors. *See* Appellee's Answering Brief ("AAB") at 17-18, 24. It then claims the district court did not actually commit the error complained of. The government argues that the court did consider those facts but chose not to give them any weight. AAB 18-22, 24-27. Finally, the government argues that even if the error occurred, Mr. Mitchell cannot survive plain-error review. *See* AAB 22-23, 27-29. As set forth below, each of these arguments is not persuasive.

## ARGUMENT

### I. The court rejected the plea agreement as a matter of fact, denying any consideration of the rights given up by Mr. Mitchell.

Contrary to the government's claims, the district court refused to consider Mr. Mitchell's plea agreement when assessing the § 3553 factors and Mr. Mitchell preserved the error for appeal.

### A. Mr. Mitchell preserved the issue for appeal.

The government starts off by claiming that Mr. Mitchell did not preserve this issue for appeal. It claims that Mr. Mitchell should have raised this at the end of sentencing when "something might have been done about it." AAB 17-18. The government is wrong.

Mr. Mitchell did more than enough to preserve his challenge to the district court's refusal to consider the rights he waived in the plea agreement. Under Federal Rule of Criminal Procedure 51(b), "[a] party may preserve a claim of error by informing the court--when the court ruling or order is made or sought--of the action the party wishes the court to take." "By informing the court of the action he wishes the court to take, a party ordinarily brings to the court's attention his objection to a contrary decision." *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020) (cleaned up). Thus, under Rule 51(a), a party need not take exception to a court's ruling after the judge denies the relief requested.

Under Rule 51, the parties made an affirmative request that the court consider reducing his sentence based on his waiver of rights set out in the plea agreement. ER-55-56 (government requesting a

reduction based on the "expeditious resolution and appellate waiver");
ER-88 (requesting a reduction based on a combination of circumstances
including appellate waiver), 108 (same), 132 (same). But the court
expressly denied that request stating, "I don't agree with the plea
agreement, I reject it as a matter of fact." ER 50-51; *see also* ER-56-57
("I reject the plea agreement, so I reject that provision. I don't exercise
my discretion."); ER-50-51 ("And I particularly reject the attempt to
circumscribe the court's sentencing discretion.); *id.* ("I reject the plea
agreement. I am not going to put my happy face emoji on that.").

Because the request was made and the court rejected it, no more
was required. Under Rule 51, the parties need not articulate their
reasons for disagreeing with every statement a judge makes to avoid
plain error. Mr. Mitchell was not, as the government suggests,
additionally required to take exception to the district court's ruling
rejecting the parties' request. *See* Fed. R. Crim. P. 51(a) ("Exceptions to
rulings or orders of the court are unnecessary."). Thus, plain error does
not apply.

4

**B.    The district court categorically refused to consider the plea agreement under § 3553(a).**

Mr. Mitchell argued the district court "refused to consider" the fact he waived rights under the plea agreement, including his appellate rights, "*when* conducting § 3553(a) analysis." Appellant's Opening Brief (AOB) 19 (emphasis added). The court said it did not like the appellate waiver. The court said the waiver "doesn't promote finality. It is not the purpose of a plea agreement. It is totally antithetical to the purpose of a plea agreement. Might as well just have a jump ball, let him plead straight up. And the court will give him what it gives, and he can appeal." ER-51. Because the court disagreed with that portion of the plea agreement, it rejected the entire agreement as a "matter of fact." ER-50-51. Refusing to consider the existence of the plea agreement, the court refused to weigh the plea agreement, and the waiver of rights in it, when conducting the sentencing analysis. ER-50-51.

In response, the government argues we should take the judge "at his word" and conclude the judge did not commit any error. AAB 19 (citing *United States v. Carty*, 520 F.3d 984, 994 (9th Cir. 2008) (en banc)). The government points out that the judge said it read the plea agreement, which contained the rights Mr. Mitchell agreed to waive.

5

AAB 19. It also notes that the judge considered the appellate waiver when it criticized it on the record. AAB 21. According to the government, the argument that the judge did not consider Mr. Mitchell's waiver of rights is refuted based on this record. AAB 19, 21. These arguments are flawed for at least three reasons.

First, the question is not whether the judge knew about Mr. Mitchell's waiver of rights, the question is whether the court considered them when weighing the § 3553(a) factors. In this case, the court knew about his waiver of rights in the plea agreement, found the appellate waiver to be illusory, and then took that the fact of the plea agreement and the things Mr. Mitchell gave up completely out of the sentencing equation.

Second, we know that the court did not consider this evidence because we take the judge "at his word." *Id.* The judge said, in so many words, that the waiver of rights pursuant to the plea agreement was being removed from consideration. The court said:

> I don't agree with the plea agreement**, I reject it as a matter of fact**. And I particularly **reject the attempt to circumscribe the court's sentencing discretion**. When your guidelines come out to 63 to 78 months -- those are your guideline calculations, I don't necessarily agree with them. But when they come out to that and you say, oh, but if he

imposes a sentence that is less than the low end of the guidelines you can still appeal.

That ***doesn't promote finality***. It is not the purpose of a plea agreement. ***It is totally antithetical to the purpose of a plea agreement***. Might as well just have a jump ball, let him plead straight up. And the court will give him what it gives, and he can appeal.

So it has no effect on what the exposure is, but ***I reject the plea agreement***. I am not going to put my happy face emoji on that.

ER-50-51 (emphasis added).

The government cannot hide from the court's repeated statement that it was "rejecting the plea agreement." Instead, the government now claims we shouldn't take the judge at its word. According to the government, the judge's words about "'rejection' of the agreement [are] most reasonably read in context as only a rejection" of the sentencing recommendation and not a "rejection of the plea agreement" as a whole. AAB 20. But if the court really meant that it was only rejecting the sentencing recommendation, it could have said so. It didn't. The court's use of the phrase "rejecting the plea agreement" was not a slip of the tongue. The court repeated that phrase more than once in this case.

What's more, this judge's use of the phrase "rejecting the plea agreement" in the context of Rule 11(c)(1)(B) agreements (known as a

"type-B" agreement) is not a one off. This Court has repeatedly
addressed this judge's "purported" rejection of a "type-B" agreement.
*United States v. Montoya*, 48 F.4th 1028, 1033 (9th Cir. 2022), *reh'g
granted and opinion vacated on other grounds,* 54 F.4th 1168 (9th Cir.
2022), *and on reh'g en banc*, No. 21-50129, 2023 WL 5945973 (9th Cir.
Sept. 13, 2023) (stating the district court's use of "reject" in the context
of a type-B plea agreement has no legal effect.); *See also United States
v. Hernandez-Gomez*, No. 21-50224, 2023 WL 1097256, at *2 (9th Cir.
Jan. 30, 2023) (finding "the district court['s] purported [] 'reject[ion of]
the plea agreement'" to have no legal effect). Recently, this Court again
said that this judge's "use of the word 'reject' in the context of a Type B
plea agreement can have no legal effect." *United States v. Torres-Giles*,
80 F.4th 934, 939 (9th Cir. 2023).

Knowing it cannot "reject" a Type-B plea agreement as a matter of
law, the judge explicitly said it was "rejecting the plea agreement as a
matter of fact." ER-50-51. Thus, the most natural reading of the court's
intentional use of his words was that the court was rejecting the plea
agreement, and the waiver of rights Mr. Mitchell gave up by entering
the agreement, as a fact it would consider within the § 3553(a) calculus.

The court's language makes clear that it did not merely disagree with the sentencing recommendation in the plea agreement, it disagreed with the very premise of the plea agreement and refused to consider it "as a matter of fact" when evaluating the sentencing factors.

Third, the district court did not merely express an opinion about the appellate waiver that had no resulting effect on the sentencing as the government claims. AAB 16, 21. The court made clear that his opinion did have an effect. It created a rule that because the court disagreed with the appellate waiver, it now had the authority to completely remove the plea agreement and the waiver of rights in it from the § 3553(a) sentencing equation. *See United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017) (en banc) (noting that a district court "district court formulates or adopts a generalized rule that will apply to an entire class of cases, not just to the case at hand."). But the court has no such authority. It cannot decide to completely remove this evidence from its § 3553(a) sentencing analysis. *Pepper*, 562 U.S. at 488 ("'[n]o limitation shall be placed on the information' a sentencing court may consider 'concerning the [defendant's] background, character, and conduct.'"). The court was required to weigh this evidence and give as

little or as much weight as appropriate. What it cannot do is completely remove it from the equation all together.

### C. Even if the issue was not preserved, Mr. Mitchell meets the plain error prongs.

"Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (citing *United States v. Hammons*, 558 F.3d 1100, 1103 (9th Cir. 2009). If these conditions are met, the reviewing court has the discretion to grant relief so long as the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Depue*, 912 F.3d at 1232.

The government first argues that Mr. Mitchell cannot satisfy the first two prongs of plain error because the errors that Mr. Mitchell complains of are not obvious. AAB 18. It makes this claim by misrepresenting the argument on appeal. According to the government, Mr. Mitchell complains, on one hand, that the court *did not consider* the plea agreement in its entirety, and on the other hand, he complains that the court *did consider* this evidence and criticized it. That was not Mr. Mitchell's argument. Again, Mr. Mitchell argues that the court categorically refused to consider the evidence *when* weighing the

sentencing factors.

The court's refusal to consider this information when conducting the sentencing analysis is contrary to the bedrock sentencing principles. *See Pepper*, 562 U.S. at 488; 18 U.S.C. § 3661; *Id.* § 3553(a)(1), (a)(2)(A), (B). An error is "plain" as long as it is "contrary to the law at the time of appeal." *Depue*, 912 F.3d at 1234 (simplified); *accord United States v. Green*, 940 F.3d 1038, 1045 (9th Cir. 2019). The court's words make clear that it refused to consider the waiver of rights in the plea agreement when conducting § 3553(a) analysis. By categorically refusing to consider this evidence, the district court "directly contravene[d] Congress' expressed intent in § 3661," *Pepper*, 562 U.S. at 491, and committed plain error.

The third and fourth prongs of plain error review are satisfied because the error was prejudicial and affected the outcome of the proceedings, and therefore affected Mr. Mitchell's substantial rights. *United States v. Waknine*, 543 F.3d 546, 554 (9th Cir. 2008). As to the third prong, Mr. Mitchell need only "'demonstrate a reasonable probability that [he] would have a received a different sentence' if the district court had not erred." *United States v. Tapia*, 665 F.3d 1059,

1061 (9th Cir. 2011) (citing *Waknine*, 543 F.3d at 554). The reasonable

probability standard is met where, like here, sentencing arguments

were "never properly considered or ruled upon." *United States v. Doe*,

705 F.3d 1134, 1156 (9th Cir. 2013).

The government argues there is no reasonable probability by

arguing for the first time on appeal that the rights Mr. Mitchell waived

in the plea agreement were insignificant and of no value. AAB 22-23.

But that is not what the government said below. The government

believed the appellate waiver was valuable because it included it in the

plea agreement and advocated for it at the sentencing hearing. ER-55-

56. Indeed, this Court has recognized, that by entering into a plea

agreement, the defendant saves the "government significant and scarce

resources" and shows that the defendant "has demonstrated an

acceptance of responsibility above and beyond what is already taken

into account by the adjustments contained in the Sentencing

Guidelines." *United States v. Heredia*, 768 F.3d 1220, 1226 (9th Cir.

2014) (internal quotation omitted).[1]

---

[1] The acceptance of responsibility guideline expressly does not
require a defendant to waive his right to appeal in order to qualify for

The government also claims that Mr. Mitchell wasn't giving up any rights because there was nothing he could have challenged had he filed motions or went to trial. AAB 22-23. That simply is not true. Mr. Mitchell gave up his right to collaterally attack his conviction in the future, including giving up "any argument that the statute of conviction or Defendant's prosecution is unconstitutional and any argument that the facts of this case do not constitute the crime charged." ER-134. In fact, because of the plea agreement, he cannot challenge the constitutionality of 18 U.S.C. § 922(g), the statute of conviction, under *New York State Rifle Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In this case, the court rejected out of hand any evidence of Mr. Micthell's waiver of rights in the plea agreement due to its legally erroneous conclusion that a plea agreement is illusory unless it protects the court's sentencing discretion from appellate review. *See also* ER-50-

_____

the reduction. *See* U.S.S.G. § 3E1.1 cmt. (stating that the government should not withhold acceptance-of-responsibility based on "whether the defendant agrees to waive his or her right to appeal"). Section 3E1.1 thus actually increases the value of appellate waivers: Under the terms of the guideline, a defendant who, like Mr. Mitchell, waives his right to appeal goes above and beyond what is expected or required when it comes to accepting responsibility for his crime.

51. If the district court had followed the law and taken the rights waived by Mr. Mitchell into consideration, there is a reasonable probability that it would have started its sentencing analysis from the lower advisory guidelines range and imposed a lower sentence. *Hammons*, 558 F.3d at 1105; *Waknine*, 543 F.3d at 553.

Finally, the district court's plain error affected the fourth prong because it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 551. That prong is satisfied where, as here, the district court committed errors that may have increased the sentence. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018); *United States v. Joseph*, 716 F.3d 1273, 1281 (9th Cir. 2013).

Moreover, the district court's overly narrow view of its own sentencing authority violated not just the plain dictates of the federal sentencing statutes and numerous decisions by this Court and the Supreme Court, but also the "uniform and constant . . . federal judicial tradition" of "consider[ing] every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper*, 562 U.S. at 487. Given the district court's severe violation of

14

this bedrock sentencing principle, "what reasonable citizen wouldn't bear a rightly diminished view of the judicial process and its integrity if courts refused to correct obvious errors of their own devise that threaten to require individuals to linger longer in federal prison than the law demands?" *Rosales-Mireles*, 138 S. Ct. at 1908 (quoting *United States v. Sabillon-Umana*, 772 F.3d 1328, 133-34 (10th Cir. 2014) (Gorsuch, J.)).

Accordingly, if this Court concludes that this appeal is subject to plain-error review, it should find that the district court plainly erred and exercise its discretion to correct the error by vacating the sentence and remanding for resentencing.

## II. The court rejected consideration of Mr. Mitchell's self-inflicted injuries "out of hand."

Mr. Mitchell also argued that the court rejected consideration from the § 3553(a) analysis the serious injuries he suffered because those injuries were self-inflicted. Contrary to the government's arguments, the court did not consider and weigh this evidence. The government's claim that Mr. Mitchell did not preserve this issue below is also wrong.

## A.    Mr. Mitchell preserved the issue for appeal.

The record shows Mr. Mitchell preserved the issue for appeal. As explained above, all Rule 51 requires to "preserve a claim" is that a party "inform[] the court . . . of the action the party wishes the court to take." Fed. R. Crim. P. 51(b). The party need not object again after the court takes a different approach. Fed. R. Crim. P. 51(a) ("Exceptions to rulings or orders of the court are unnecessary."). A party need not raise futile objections. *United States v. Martinez*, 850 F.3d 1097, 1100 n.1 (9th Cir. 2017).

The parties informed the court that the injuries were relevant to the sentencing analysis. As the government, itself, acknowledges, Mr. Mitchell's injuries and the fact that they were the natural consequences of his own actions was a "recurring theme in the court's extensive colloquy with each party before it formally pronounced sentence" and before the court concluded that it rejected the evidence "out of hand." AAB 24-25 (citing ER-64).

The parties repeatedly made the case that the injuries were relevant to "the history and characteristics" of Mr. Mitchell, "just punishment for the offense," as well as the need for the sentence "to

16

afford adequate deterrence." *See* 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B).
Defense counsel noted "natural consequences are relevant in the
decision of what qualifies as just punishment" and "sometimes the
natural consequences of our conduct is actually the most influential way
to receive punishment, because now Mr. Mitchell has to live every day --
morning, noon, night -- with debilitating pain." ER-23. She went on to
explain "the natural consequence of almost losing your life but then also
every day being burdened with the kind of injuries that he has, I think
that that is a significant punishment. And I think that that has
significant deterrent value." ER-35. Counsel for the government
explained "Mr. Mitchell has had extreme difficulty with his pain
management with his conditions which, while he brought upon himself,
doesn't mean that he should deserve to live in excruciating pain while
in custody every day." ER-53.

Despite this long debate about the significance of Mr. Mitchell's
injuries, the court concluded that it would "reject that out of hand." ER-
64. An additional objection at the end of sentencing would have been
pointless. *Martinez*, 850 F.3d at 1100 n.1. It would necessarily have
been overruled.

17

**B.**     **The district court categorically refused to consider injuries that are the natural consequence of a defendant's own conduct under § 3553(a).**

The judge again impermissibly "invent[ed] a blanket prohibition against considering" at sentencing a defendant's self-inflicted injuries that occurred during the offense conduct. *Pepper*, 562 U.S. at 491; *see also Gasca-Ruiz*, 852 F.3d at 1170 (noting that categorical rule is one that adopts a generalized rule that will apply to an entire class of cases). In response, the government does not dispute that such a blanket rule would be impermissible. And the government does not address any of the cases cited in Mr. Mitchell's opening brief that hold sentencing courts simply cannot refuse to consider after-offense-conduct facts that help tell the story of the individual that is before the court. AOB 29-30. In fact, the government acknowledges as problematic the judge's statement that it was "reject[ing]" that evidence "out of hand." AAB 24-25 (citing ER-64).

But like the government's argument regarding the waiver of rights in the plea agreement, it again claims that the judge did consider the evidence and attempts to frame the district court's decision as a mere "cho[ice]" not to give any weight to this mitigating evidence. AAB

26-27. The government's argument is unpersuasive.

Again, the government misses the point. Yes, the district court did discuss at length Mr. Mitchell's self-inflicted injuries. The court acknowledged the fact that Mr. Mitchell was in pain, and it may have had compassion for his injuries. ER-17-18, 54-55. The court, however, made clear that the natural consequences of Mr. Mitchell's conduct could not be a factor considered when analyzing § 3553(a) factors. The court stated "[b]ottom line is, Ms. Howard, he did this to himself. So punishment? Only if he punished himself and intended to do this." ER-30. The court continued that this cannot be considered as a punishment sentencing factor under § 3553(a) because it is not "punishment by the court or by the government." ER-36. The court repeatedly said it would not consider this mitigation because it was a natural consequences of Mr. Mitchell's own conduct. ER-22 (pointing out that the injuries "emanated from his decision to flee."); ER-64 ("if he wants to know who is responsible for his physical condition, all he need do is look in the mirror.").

The government's narrow interpretation of "consideration" is like saying that although the lower courts in *Pepper* found post-sentencing

19

rehabilitation to be an impermissible sentencing factor, the courts nonetheless "considered" the rehabilitation because the courts simply talked about it. In *Pepper*, the lower courts heard the mitigating evidence regarding Pepper's rehabilitation after his initial sentencing. *Pepper*, 562 U.S. at 491. The lower courts, like the district court here, sympathized with the defendant. The lower courts stated that "Pepper made significant progress during and following his initial period of imprisonment," and "commend[ed] Pepper on the positive changes he has made in his life." *Id.* at 486. Despite acknowledging the evidence, the lower courts in *Pepper*, like the court here, categorically barred consideration of the evidence under the § 3553(a) analysis. *Id.* at 493.

In this case, the court "reject[ed] out of hand" pain caused by Mr. Mitchell's own fault, ER-59, the district court "invent[ed] a blanket prohibition against considering certain types of evidence at sentencing." *Id.* at 491.

> ### C. Even if the issue was not preserved, Mr. Mitchell meets the plain error prongs.

As stated above, Mr. Mitchell satisfies the first two prongs of plain error because categorically refusing to consider information about a defendant when evaluating sentencing is plain error. *See supra*, I, C.

As to the third prong, Mr. Mitchell need only "demonstrate 'a reasonable probability that [he] would have a received a different sentence' if the district court had not erred." *Tapia*, 665 F.3d at 1061. Relying on Mr. Mitchell's prior history and the conduct leading up to the injury, the government claims that there is no reasonable probability that the court would have given a lower sentence. AAB 28. But that is a picture isolated in time.

The Supreme Court has stated that when the "defendant appears for sentencing, the sentencing court considers the defendant on that day, not on the date of his offense or the date of his conviction." *Concepcion v. United States*, 142 S. Ct. 2389, 2396 (2022). The after-offense-conduct facts that help tell the story of the individual changes the circumstances of the case. As the government acknowledges, the court said he was "sympathetic" to Mr. Mitchell and had "compassion" for him. AAB 10-11 (citing ER-35, 54-55). The problem is that the court barred itself from considering this evidence when addressing the § 3553(a) factors. Had the court believed that it could consider this evidence, there is a reasonable probability that the sentence would have been lower. *Doe*, 705 F.3d at 1156 (finding it "clear" that the sentencing

errors affected substantial rights because the sentencing arguments were "never properly considered or ruled upon."). All that matters is whether there is a reasonable probability that the district court may have been more generous absent the error. *Waknine*, 543 F.3d at 553.

Finally, the fourth prong is satisfied where, as here, the district court committed errors that may have increased the sentence. *Rosales-Mireles*, 138 S. Ct. at 1907. And given the district court's severe violation of this bedrock sentencing principle, it "diminishe[s the] view of the judicial process and its integrity." *Rosales-Mireles*, 138 S. Ct. at 1908 (quoting *Sabillon-Umana*, 772 F.3d at 133-34).

## CONCLUSION

The district court's errors addressed in Mr. Mitchell's brief, either individually or in combination, merit a remand for resentencing.

Respectfully submitted,

Dated:  October 5, 2023

*/s/ Zandra Luz Lopez*
ZANDRA LUZ LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone:  (619) 234-8467

22

## CERTIFICATE OF RELATED CASES

Counsel is unaware of any related pending cases before this Court.


Respectfully submitted,


Dated: October 5, 2023          */s/ Zandra Luz Lopez*

ZANDRA LUZ LOPEZ
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101-5097
Telephone: (619) 234-8467

23

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-50097

I am the attorney or self-represented party.

**This brief contains** 4,721 **words,** including [ ] words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

  [ ] it is a joint brief submitted by separately represented parties.
  [ ] a party or parties are filing a single brief in response to multiple briefs.
  [ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [ ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** s/ Zandra Luz Lopez **Date** 10/05/2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*